SULLIVAN, Judge.
On May 8, 1997, defendant, Kenneth Del-eambre, was charged by two separate grand jury indictments with one count of unauthorized use of a movable valued in excess of $1000.00, a violation of La.R.S. 14:68, and one count of malfeasance in office, a violation of La.R.S. 14:134. Defendant is a former Louisiana State Trooper and former commander of State Police Troop D in Lake Charles. The offenses were allegedly committed during his tenure as commander of Troop D.
On June 10,1997, defendant entered a plea of not guilty to both charges. Defendant filed a motion to quash the indictments on August 20, 1997. After a hearing held September 17, 1997, the trial court granted the motion to quash.
The State is now appealing that ruling, alleging the trial court erred in two respects: (1) quashing the indictments because the prosecution'used defendant’s statements given to State Police Internal Affairs investigators to secure the indictments, Rand (2) disregarding the mandatory language of La. Code Crim.P. art. 442. For the following reasons, we reverse.
ASSIGNMENTS OF ERROR NOS. 1 & 2
In Assignment of Error No. 1, the State claims the trial court erred by quashing the grand jury indictments because the prosecution used defendant’s statements before the grand jury. In Assignment of Error No. 2, the State claims the trial court erred by disregarding La.Code Crim.P. art. 442 in granting defendant’s motion to quash.
In support of his motion to quash, defendant claimed administrative statements given by defendant to the Internal Affairs Division of the Louisiana State Police were improperly given to the Attorney General’s Office to be used in the investigation of the offenses at issue. The statements were taken pn several different dates. One such statement was used in the grand jury proceeding to question defendant. Defendant also claims all statements were used in the investigation of the offenses at issue. It is uncontested that these statements were given by defendant after he was given the following warning:
This is an administrative investigation made only for internal department purposes. Your statements cannot be used against you in any criminal investigation or proceeding nor can evidence derived from your statements. As a direct representation of the appointing authority, I hereby order you to answer all questions, truthfully, completely and unevasively. You should understand that by refusing to obey this order you can be disciplined for insubordination and the punishment for insubordination can be up to and including termination of employment. You are ordered not to disclose or discuss the contents of this interview or investigation with anyone without first obtaining written permission from the appointing authority.
Defendant’s statements, although given in an administrative setting, are still subject to the protections of the Fourteenth Amendment. Garrity v. State of New Jersey, 385 U.S. 511, 87 S.Ct. 636, 17 L.Ed.2d 586 (1967).
In its ruling granting the motion to quash, the trial court stated the following:
| alt is this court’s opinion that it violated the defendant’s rights, that it was not a knowingly and intelligent waiver of his rights, that it was illegal evidence; the Grand Jury should not have heard any of that evidence or any reference to that evidence, and because of that, this court is going to quash the indictment and allow— and grant a stay order ...
Defendant argues that the promise made to him by the Internal Affairs Division not to use his statements in any criminal proceeding should be enforced. Defendant argues his statements are subject to the “use plus derivative use immunity.” As discussed in State v. Parker, 625 So.2d 1364 (La.App. 1 Cir.1993), writ denied, 93-2832 (La.2/25/94), 632 So.2d 761, there are two types of immunity: transactional immunity and use plus derivative use immunity. The court explained the two types of immunity as follows:
Transactional immunity is broader because it affords complete immunity from prosecution on the charged offense. Use plus derivative use immunity still allows for prosecution on the charge, provided that the State cannot “use” evidence provided *848 by the defendant as a result of the immunity agreement, or any information “derived” therefrom.
Id. at 1368.
The promise at issue was a promise that defendant’s statements or evidence derived from them would not be used in any criminal proceeding, and thus was a promise of “use plus derivative use immunity” rather than “transactional immunity.”
The first issue to be resolved is whether the promise made by the Internal Affairs Division of the State Police is binding on the Attorney General prosecuting the present case. In State v. Cinel, 619 So.2d 770, 778 (La.App. 4 Cir.), writ denied, 629 So.2d 369 (La.1993), cert. denied, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 71 (1994), reversed on other grounds, 94-0942 (La.11/30/94), 646 So.2d 309, the court held that an investigator for the District Attorney’s Office lacked the “requisite authority, apparent or otherwise, to make an agreement not to prosecute Cinel.” In Law v. City of Eunice, 94-1312 (La.App. 3 Cir. 4/5/95), 653 So.2d 149, this court found that a police officer, not 14associated with the District Attorney’s Office, lacked actual and apparent authority to bind the district attorney in an agreement not to prosecute. This court cited Cinel in support of its holding and stated the following: “The district attorney has complete control of every criminal prosecution instituted or pending in his district, and determines whom, when and how he shall prosecute. La.Code Crim.P. art. 61.” Id. at 151-52. These two eases are distinguishable from the present case since they involved transactional immunity, while the present case deals with use plus derivative use immunity.
In State v. Edmondson, 97-108 (La.App. 1 Cir. 7/28/97), 699 So.2d 882, writ granted, 97-2456 (La.2/20/98), 709 So.2d 763, the court held that a promise not to prosecute (transactional immunity) made by Mississippi law enforcement officials prohibited Louisiana officials from using a statement given by the defendant in exchange for the promise. As authority, the court cited Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). The court discussed Murphy as follows:
This issue was addressed in Murphy where the Court was called upon to decide whether one jurisdiction within our federal structure may compel a witness, whom it has immunized from prosecution under its laws, to give testimony which might then be used to convict him of a crime in another such jurisdiction. In Murphy, the petitioners were subpoenaed to testify and granted immunity under the laws of New Jersey and New York. Notwithstanding the grant of immunity, they still refused to respond to questions on the ground that the answers might tend to incriminate them under federal laws, to which the grant of immunity did not purport to extend. After being held in civil and criminal contempt of court, the petitioners appealed. Murphy, 378 U.S. at 53-54, 84 S.Ct. at 1596. The United States Supreme Court in a lengthy opinion concluded:
[W]e hold the constitutional rule to be that a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by |5federal officials in connection with a criminal prosecution against him. We conclude, moreover, that in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating and prosecuting crime, the Federal Government must be prohibited from making any such use of compelled testimony and its fruits. This exclusionary rule, while permitting the States to secure information necessary for effective law enforcement, leaves the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege in the absence of a state grant of immunity. [Footnote omitted.]
Murphy, 378 U.S. at 79, 84 S.Ct. at 1609-1610.
The holding in Murphy was cited with approval in State v. Wallace, 321 So.2d 349, 357 (La.1975) (on rehearing), wherein the Louisiana Supreme Court stated:
*849 But the prosecution may compel a witness to testify against himself only if it guarantees that his testimony will not be used against him in any judicial proceedings, except for perjury in giving such testimony; an immunity statute is constitutional only if its scope is coextensive with the privilege against self-incrimination. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Hence, neither the compelled testimony of a witness that was obtained in one forum, nor the fruits of such testimony, can be used against him in another forum. Murphy v. Waterfront Commission of New York, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).
Id. at 886.
The reasoning in Edmondson and Murphy applies to the present case. The grant of use plus derivative use immunity replaces a person’s Fifth Amendment right against self-incrimination when that person is compelled to give testimony. Thus, use plus derivative use immunity is a constitutional protection that continues to protect regardless of the forum. See also State v. Lehrmann, 532 So.2d 802 (La.App. 4 Cir.), writ denied, 533 So.2d 364 (La.1988). The grant of use plus derivative use immunity 16by the Internal Affairs Division to defendant is binding on the prosecutor of the present case.
The next question is whether quashing the indictment is the appropriate mechanism for enforcing the immunity agreement. In Parker, 625 So.2d at 1368, the court stated:
In our view, since transactional immunity would prevent any prosecution for the charged offense, a motion to quash would be the correct procedural vehicle to challenge an indictment which allegedly violated a grant of transactional immunity. On the other hand, if only use plus derivative use immunity was granted, we find that the correct procedure by which to challenge an indictment allegedly returned in violation of a grant of use plus derivative use immunity would be a motion to suppress any evidence obtained as a result of the grant of immunity, or any evidence derived directly or indirectly therefrom.
In Edmondson, the court stated that, “if the government has independent evidence to convict the person of the crime about which he or she testified under a grant of use immunity, he or she may still be prosecuted.” Edmondson, 699 So.2d at 885-86. The defendant in Edmondson challenged the use of her statement by filing a motion to suppress. Following this rationale, a motion to quash is not the proper procedural vehicle for an indictment returned in violation of a grant of use plus derivative use immunity. If a motion to quash were proper, a court would have to conduct a preliminary trial on the evidence to determine if the State has independent evidence to convict.
However, in State v. Lehrmann, 532 So.2d 802, the court reversed a trial court’s denial of a motion to quash a grand jury indictment when the state charges brought against the defendant were based on information he gave to federal authorities in return for a use-immunity agreement. The court cited State v. Tanner, 425 So.2d 760 (La.1983), for the proposition that the issue was properly raised by a motion to quash. The issue in Tanner was whether the defendant could “enforce an agreement whereby |7he agreed to testify before the grand jury and also produce the testimony of an eye witness and the state reciprocally promised that the information against him would be dismissed if the grand jury returned ‘not a true bill.’” Id. at 761. The defendant in Tanner received a promise not to prosecute, or transactional immunity, which is different from use plus derivative use immunity promised in the present ease. For this reason, Tanner is distinguishable from the present case, and quashing the indictment is not the proper remedy in the present case.
La.Code Crim.P. art. 442 provides that no indictment shall be found invalid on the grounds that it was based in whole or in part on illegal evidence. Article 442 provides in pertinent part:
A grand jury should receive only legal evidence and such as is given by witnesses produced, or furnished by documents and other physical evidence. However, no in- *850 dietment shall be quashed or conviction reversed on the ground that the indictment was based, in whole or in part, on illegal evidence, or on the ground that the grand jury has violated a provision of this article.
The statements in the present case and evidence derived from them would presumably be considered illegal evidence at trial since defendant was compelled to give the statements by threat of termination and the statements were given in exchange for a promise of use plus derivative use immunity. “[T]he Fifth Amendment requires that a witness compelled to testify be in no worse position in regard to criminal prosecution after he or she testifies than before.” Edmondson, 699 So.2d at 886, citing United States v. Quatermain, 467 F.Supp. 782, 787-88 (E.D.Pa.1979).
In State v. Walker, 567 So.2d 581 (La.1990), the supreme court discussed a similar issue. The court summarized the principal issue before it as follows:
[W]hether the trial court properly quashed defendant’s indictment because of the non-malicious conduct of an assistant district attorney who, without informing defendant he was a suspect in a criminal investigation and without defendant’s attorney’s knowledge or consent, [ 8obtained information and documents from defendant which allegedly led to his indictment.
Id. at 582.
The court began its analysis with the following:
Generally, a defendant does not have a constitutional right to challenge an indictment by asserting the illegality of the evidence that was presented to the grand jury. In Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), the Court denied a challenge to an indictment allegedly based on hearsay evidence. Noting that to permit such a challenge would allow the accused in every case to “insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury”, the Court concluded that such a rule would result in “interminable delay but add nothing to the assurance of a fair trial”. 350 U.S. at 363-64, 76 S.Ct. at 408-09. The Court accordingly held that a constitutional challenge to the evidence supporting a grand jury indictment was generally unavailable, observing that an “indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits”. 350 U.S. at 363, 76 S.Ct. at 408. See generally 2 W. LaFave & J. Israel, Criminal Procedure § 15.4 (1984).
Later, in United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the Court rejected a challenge to an indictment allegedly based on evidence obtained through an unconstitutional search and seizure. The Court reasoned:
The grand jury’s sources of information are widely drawn and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence; or even on the basis of information obtained in violation of a defendant’s Fifth Amendment privilege against self-incrimination....
414 U.S. at 344-45, 94 S.Ct. at 618 (citations omitted).
A few decisions have recognized exceptions to the general rule, especially when the challenge to the grand jury indictment was based on prosecutorial misconduct which occurred before the grand jury.
Id. at 584-585 (footnotes omitted).
The court further explained:
lain the decisions constituting exceptions to the general rule, the indictment, although valid on its face, was returned by a grand jury whose integrity as an independent body had been impaired because of the prosecutorial misconduct and which therefore was not unbiased, and the court concluded that the indictment should not form the basis for requiring a defendant to stand trial. However, most decisions have denied motions to dismiss indictments based on prosecutorial misconduct because *851 there was no actual prejudice or adverse impact sustained by the defendant, or because there was no significant infringement on the grand jury’s ability to exercise independent judgment.
An analysis of the decisions of the federal courts and of other jurisdictions leads to the conclusion that indictments generally are not dismissed merely because of prosecutorial misconduct in presenting inadmissible evidence to the grand jury. To warrant dismissal of an indictment the prosecutorial misconduct must be of such a nature as to mislead or unfairly affect the integrity of the grand jury as an independent and unbiased body.
La.Code Crim.Proc. art. 442 prohibits the quashing of an indictment on the ground that the indictment was based on illegal evidence. Nevertheless, this court has recognized that a defendant should not be required to stand trial on an indictment obtained by prosecutorial misconduct which misled or unfairly affected the integrity of the grand jury as an independent and unbiased body. See State v. Smalling, 240 La. 915, 125 So.2d 409 (1960) (the prosecutor’s compelling the defendant to testify in front of the grand jury relative to the crimes charged against him justifies quashing the indictment); see also State v. Harrell, 228 La. 434, 82 So.2d 701 (1955). However, the administrative disadvantages of allowing defendants generally to challenge the evidence supporting grand jury indictments (thereby opening grand jury transcripts for inspection and permitting minitrials of indictments) usually outweigh the value of eliminating an unwarranted prosecution at the screening stage, especially in the absence of prejudice to the defendant.
The present case differs from Smalling and Harrell in that those decisions involved misconduct which clearly produced the evidence resulting in the indictment, which occurred before the grand jury itself, and which resulted in obvious prejudice. Moreover, there was no necessity in those cases for inspection by the defendant of the grand jury transcript, inasmuch as his own testimony at the hearing on the motion established the constitutional violation, and there was no necessity for a minitrial of the indictment. Finally, those cases were decided prior to the development of the present day exclusionary policy, whereas under modern criminal procedure an accused can adequately protect himself against the use of objectionable evidence at his trial without the court’s having to retry every indictment on a motion to quash.
Id. at 585-86 (footnote omitted).
| ipThe present situation likewise differs from Smalling since the statements at issue were not given before the grand jury itself. No prosecutorial misconduct occurred in the present case since the State did not know defendant had been told the statements would not be used against him in a criminal proceeding. In his motion to quash, defendant conceded this point by stating:
After the indictments were returned, undersigned counsel questioned Mr. Freese [the assistant attorney general] about the overt use of the administrative interview transcript in the grand jury proceedings. Mr. Freese readily acknowledged possession of the interview and its use by his investigative staff during the course of their handling of this matter. It was only after undersigned counsel pointed out the above warning language in the administrative interview transcript that it came to the attention of Mr. Freese.
The present ease simply involves indictments which were based in whole or in part on illegal evidence, a situation in which dismissal of the indictments is prohibited by Article 442.
The State submitted a transcript of the grand jury proceedings in order to show the numerous sources from which the grand jury conducted its investigation. At the hearing on the motion to quash, the State asserted, and defense counsel did not object, that the statement at issue was referred to only twice during the entire grand jury proceedings. These references were made during defendant’s testimony at the grand jury proceed *852 ings. During one of the references to the statement, defendant stated:
And Lt. Pease when we go back and look at him huh, made me sign an administrative form here that he couldn’t use that against me in any criminal proceedings or investigations or anybody but yet here I am fighting for my life for when after you go before Internal Affairs they make you sign administrative rights and you have to answer and if you don’t I am here to terminate you.
No other references were made to the statement. Furthermore, an abundance of other testimony was introduced at the grand jury proceedings. Defendant has not shown this | uother testimony was derived solely from the statements given by defendant — an inquiry which would be made in response to a motion to suppress the evidence.
ERRORS PATENT
After reviewing the record in accordance with La.Code Crim.P. art. 920, we find that there are no errors patent.
DECREE
For the foregoing reasons, the trial court erred in granting defendant’s motion to quash the indictments. The trial court’s order quashing the indictments is reversed and this case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.