LGAIDBY, J.
On January 31, 2001, Philip Foster was charged by grand jury indictment with one count of conspiracy to commit malfeasance in office in violation of La. R.S. 14:26 and La. R.S. 14:134 (count one); one count of conspiracy to commit money laundering in violation of La. R.S. 14:26 and La. R.S. 14:230(A)-(E) (count two); and one count of conspiracy to commit money laundering in violation of La. R.S. 14:26 and La. R.S. 14:230 (count three). Defendant pled not guilty to all counts.
Defendant filed a pre-trial “Motion to Quash, or for Other Appropriate Relief, and for Evidentiary Hearing,” asserting that he was indicted in violation of a “use plus derivative use immunity” extended pursuant to La.Code Crim. P. art. 439.1. After a hearing, the trial court quashed the indictment. On appeal, the state seeks relief from the adverse ruling of the trial court, relying on the following single assignment of error:
The trial court erred in granting defendant’s motion for a Kastigar hearing and erred in granting defendant’s motion to quash the indictment when defendant’s grand jury testimony, which was compelled by a grant of use and derivative use immunity, contained no incriminating statements by defendant or information from which a prosecution on the charged offenses could possibly be based.
Finding no merit in this assignment of error, we affirm the ruling of the trial court.
FACTS
On August 9, 1999, the Legislative Auditor filed a report indicating that from 1991 through 1999, the Department of Elections and Registrations paid excessive prices for the purchase of automatic voting machines, parts, and installations, resulting in a loss to the state in excess of $8,000,000.00. The matter was already before the Grand Jury for the Parish of East Baton Rouge for investigation. As a result of that investigation, the Commissioner |3of the Department of Elections and Registrations, Jerry Fowler, was indicted on August 19, 1999, on eight counts of malfeasance, maintaining false public records, and conspiracy to commit money laundering. The grand jury investigation proceeded as to others believed to be involved.
In connection with the continuing grand jury investigation, the District Attorney petitioned the Nineteenth Judicial District *397 Court for a certificate, pursuant to La. Code Crim. P. arts. 741-744, to compel the attendance before the grand jury of Philip Foster, a witness located outside the State of Louisiana. The state represented that Foster, on behalf of Sequoia Pacific Voting Equipment, Inc., had entered into transactions with the Department of Elections and Registrations. The state further represented that these transactions were under investigation for violations of Louisiana criminal laws and that Foster was a material and necessary witness to the grand jury investigation. Thereafter, the Attorney General for the State of Louisiana and the District Attorney jointly petitioned the court for an order, pursuant to La.Code Crim. P. art. 439.1, compelling Foster to testify because he was expected to invoke his privilege against self-incrimination. The movants advised the court that “[n]o testimony or other information compelled under the order, nor any information directly or indirectly derived from such testimony or other information, will be used against [Philip Foster] in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.” An order was signed on September 23, 1999, compelling Foster to testify and granting him use plus derivative use immunity.
Phillip Foster testified before the grand jury in September 1999, in compliance with the court’s order. He was questioned about his knowledge of business and financial arrangements between Fowler and Pasquale Ricci. [4 He was also questioned about the designation of his brother-in-law, J. David Philpot, as the exclusive agent for the sale of automatic voting machines. The state’s contention was that the designation of Philpot as a sole source for Sequoia equipment was accomplished in order to allow Fowler to avoid having to put a contract for voting machines out to bid. This allowed Fowler to order goods and services at inflated rates, with part of the state funds expended being funneled back to him and his alleged coconspirators. Foster was also questioned about his knowledge of the relationship of Philpot to others the state contended were involved in disguising the flow of money. The state filed the September 1999 grand jury testimony of Foster into the record of this proceeding. On its face, Foster’s testimony did not implicate him or anyone else in illegal activity. However, because the grand jury testimony of all of the other witnesses called during the investigation is not before us, it is unclear whether Foster’s testimony might have so diverged from that of other witnesses that it drew suspicion upon him.
On November 18, 1999, the grand jury returned a superceding and supplemental indictment, charging Jerry Fowler, J. David Philpot, Pasquale Ricci, and John Richard Delhaume, Jr., with multiple counts of violation of Louisiana law in connection with the alleged automatic voting machine kickback scheme under investigation. Guilty pleas were entered by Fowler and Ricci on November 27, 2000. Their statements, filed in connection with the entry of their pleas, implicated Foster in the kickback scheme.
In January 2001, Foster was indicted for complicity in the same voting machine kickback scheme that was the subject of his immunized testimony before the grand jury. Foster filed a “Motion to Quash, or for Other Appropriate Relief, and for Evidentiary Hearing.” He alternatively urged the trial court to dismiss the indictment against him or to suppress all of the |Revidence the government intended to use against him at trial, asserting that his indictment and the evidence to be used emanated from his September 1999 grand jury testimony. Foster assert *398 ed that under the binding principles established in Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), he was entitled to a hearing and to the relief requested. Under Kastigar, when a witness is compelled to relinquish his right to refuse to testify for fear of self-incrimination in exchange for a grant of use plus derivative use immunity, the burden of proof in any subsequent prosecution of that witness is on the government to prove that it did not use the compelled testimony in any way, directly or indirectly-[1]
The trial court initially heard oral arguments on whether the state was required to make an evidentiary showing pursuant to Kastigar prior to trial. The trial court ordered that a Kastigar hearing be held and advised the state that it should consult the governing law and be prepared to meet the appropriate burden of proof.[2]
On April 29, 2002, the trial court held the Kastigar hearing. In keeping with the burden of proof established in Kastigar, the defendant called upon the state to affirmatively demonstrate that his indictment and any evidence to be used against him at trial did not emanate directly or indirectly from his compelled grand jury testimony in September 1999. At the Kastigar hearing, the state called no witnesses. No representative of the state testified to establish that the state did not make direct or indirect use of Foster’s testimony to secure his indictment, nor did the state call Fowler or |fiRicci to prove that their actions in pleading guilty and implicating Foster were not a direct or indirect result of Foster’s testimony, even though the state argued to the court that Foster’s indictment was based upon information obtained from Fowler and Ricci after their indictments. Other than the unsworn assertions of the prosecutor at the Kastigar hearing and the memoranda submitted, both accepted as argument only, the state made no effort to produce evidence to affirmatively demonstrate that the Foster indictment was the result of evidence obtained from sources wholly independent of Foster’s immunized testimony. Furthermore, the prosecutor conceded that prior to eliciting Foster’s 1999 compelled testimony, the State had no information that implicated Foster in criminal activity.
The state filed an analysis of Foster’s September 1999 testimony, also accepted as argument only. It is clear that the state believed Foster concealed his involvement in the kickback scheme and misrepresented the facts to the 1999 grand jury. The state also offered the record of the court proceedings against others implicated in the kickback scheme and proffered, but without attempting to lay an evidentiary foundation for admissibility, twenty-three boxes of unauthenticated materials gathered for the purpose of responding to defendant’s discovery requests.
After the state completed its submission at the Kastigar hearing, the trial court pointed out that the state did not adduce evidence of what it used to gain Foster’s indictment or what it would use to secure his conviction so that the court and the defendant could examine whether there was an improper connexity, direct or indi *399 rect, with the compelled testimony. While the state introduced various documents at the healing, it did not offer any testimony or affidavits to establish that the state did not gain any prosecutorial advantage from the immunized testimony. Essentially, the |7state took the position that the trial court should look at the documents in the case and accept the representations made by the state in oral argument that it did not make direct, indirect, or derivative use of Foster’s testimony.[3] The trial court repeatedly advised the state during the hearing that it considered this an insufficient showing under Kastigar and that, based upon the showing made, there was no way for it to determine whether a Kastigar violation had occurred. At the conclusion of the hearing, the trial court found that the state failed to sustain the affirmative burden of proof imposed under Kastigar and quashed the indictment.
LAW AND ANALYSIS
The state’s assignment of error presents three related issues for our consideration. At the outset, we must determine whether the trial court erred in entertaining defendant’s request for a hearing pursuant to Kastigar. If we find that such a hearing was appropriate, we must further determine whether the trial court erred in holding that the state failed to meet its burden of proof and whether the appropriate remedy was imposed.
The Fifth Amendment to the United States Constitution provides that no person shall be compelled to bear witness against himself. This privilege has been extended to the states through the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The privilege against self-incrimination is also guaranteed in Article 1, Section 16 of the Louisiana Constitution of 1974. However, notwithstanding the constitutionally-guaranteed privilege, an individual can be compelled to testify if granted immunity coextensive with the scope of the privilege against self-incrimination. Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 54, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964).
s A grant of immunity to procure testimony which would otherwise be incriminating is characterized as either “transactional immunity” or “use plus derivative use immunity.” “Transactional immunity” affords complete immunity from prosecution on the charged offense. “Use plus derivative use immunity” allows for prosecution on the charge, but the state cannot “use” evidence provided by the defendant as a result of the immunity agreement or any information derived therefrom. State v. Parker, 625 So.2d 1364, 1368 (La.App. 1st Cir.1993), writ denied, 93-2832 (La.2/25/94), 632 So.2d 761. If the government has independent evidence, a party who has testified under compulsion may still be prosecuted. State v. Edmonson, 97-0108, p. 6 (La.App. 1st Cir.7/28/97), 699 So.2d 882, 885-886, reversed on other grounds, 97-2456 (La.7/8/98), 714 So.2d 1233.
Where a formal statutory grant of immunity is extended, the Fifth Amendment is necessarily implicated. State v. Edmonson, 97-2456, p. 6 (La.7/8/98), 714 So.2d 1233, 1237. In this case, the state obtained a formal statutory grant of immunity pursuant to La.Code Crim. P. art. 439.1, compelling the defendant to testify at the grand jury hearing in September 1999 in connection with the grand jury’s investigation of the State Commissioner of Elections and Registrations and individu- *400 ais associated with him. Pursuant to that order, Philip Foster was precluded from invoking the privilege against self-incrimination guaranteed to him under the federal and state constitutions. Where a court orders a witness to relinquish that privilege, La.Code Crim. P. art. 439.1(C) provides in pertinent part:
[N]o testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information, may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement or otherwise failing to comply with the order.[4]
lain Edmondson, the Louisiana Supreme Court explained the constitutional implications of immunity statutes such as the one adopted and embodied in La.Code Crim. P. art. 439.1:
Statutory immunity is what may be granted by statute when a witness is summoned to testify at a trial or before a grand jury and refuses to do so by invoking his Fifth Amendment privilege against self-incrimination. The State, through the explicit authorization of an immunity statute, may then grant the type of immunity afforded by the statute, and may compel the recalcitrant witness’ testimony, under penalty of contempt, and over the witness’ invocation of his or her right to remain silent. However, the immunity provided to the witness under the statute in order to compel his or her testimony must be at a minimum co-extensive with the asserted Fifth Amendment privilege which it has displaced. Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Therefore, the United States Supreme Court has held that where a witness’ testimony is compelled through a statutory grant of immunity, prosecu-torial authorities are prohibited from using the compelled testimony itself or the fruits derived from the testimony in a subsequent prosecution of the compelled witness. By preventing the use of the compelled statement in any respect, the immunity required by Murphy insures that the testimony cannot lead to the infliction of criminal penalties on the compelled witness. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); In re Parker, 357 So.2d 508 (La.1978). (Footnote omitted.)
97-2456 at pp. 6-7, 714 So.2d at 1237.
In Kastigar, the United States Supreme Court established a mechanism for insuring that the state does not make direct or indirect use of compelled testimony. Once a defendant demonstrates that he has testified under a grant of immunity, a heavy burden shifts to the prosecution to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony. Kastigar, 406 U.S. at 461-462, 92 S.Ct. at 1665. In United States v. Hubbell, 530 *401 U.S. 27, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000), the United States Supreme Court reiterated its holding in Kastigar:
[A] person who is prosecuted for matters related to testimony he gave under a grant of immunity does not have the burden of proving that his testimony was improperly used. Instead, ... the statute imposes an affirmative duty on the prosecution, not merely to show that its evidence is not tainted by the prior testimony, but “to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.”
530 U.S. at 40, 120 S.Ct. at 2045.
While the court in Kastigar did not mandate the state to bear its burden of proof at a hearing conducted prior to trial, courts routinely consider this issue in the context of a pre-trial motion to quash an indictment or in the context of a motion to suppress evidence, depending on the circumstances of the case. A trial court may hold a Kastigar hearing pre-trial, post-trial, mid-trial (as evidence is offered), or it may employ some combination of these methods. United States v. De Diego, 511 F.2d 818, 823-824 (D.C.Cir.1975).[5]
The state has cited no authority, nor are we aware of any, that stands for the proposition that the trial court cannot hold the hearing contemplated by Kastigar prior to trial when the defendant asserts a Kasti-gar violation in a pre-trial motion.[6] Indeed, the jurisprudence suggests that it would have been error for the trial court to deny such a hearing. For example, in United States v. Cantu, 185 F.3d 298, 304 (5th Cir.1999), the court made it clear In that the substantial burden of Kastigar requires the government to give the defendant a chance to cross-examine relevant witnesses to ensure the lack of tainted evidence.
Under Kastigar and Hubbell, the burden of proof is entirely on the state. In Hubbell, the Supreme Court rejected the argument that someone other than the prosecutor, presumably the defendant, must show that there is some substantial relationship between the compelled testimonial communications and some aspect of the information used in the investigation or the evidence presented at trial. Hubbell, 530 U.S. at pp. 45-46, 120 S.Ct. at 2048.
Based on the controlling jurisprudence, we are unswayed by the argument of the state, advanced in the trial court and again on appeal, that defendant was obligated to point to some particular piece of allegedly tainted evidence in order to be entitled to a Kastigar hearing. Kastigar explicitly holds that one raising a claim under an immunity statute need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate, independent sources. Accordingly, we find that the trial court did not err in granting an evi-dentiary hearing prior to trial on the question of whether the state made direct, indi *402 rect, or derivative use of Foster’s 1999 compelled grand jury testimony.
The next question we must resolve is whether the trial court erred in finding that the state failed to bear its burden of proof under Kastigar. Louisiana courts have not yet addressed the findings required by a trial court or the standard of review for a trial court’s ruling on a motion to quash an indictment or on a motion to suppress evidence held in compliance with the principles announced in Kastigar. However, federal jurisprudence | ^interpreting the analogous federal use and derivative use immunity statute provides us with ample guidance. Under the rationale used in Kastigar, the court should make specific findings of fact with regard to the evidence presented to the grand jury by the government to determine whether it was tainted directly or indirectly by the immunity provided to the defendant. The burden is on the government to show by a preponderance of the evidence that each item of evidence presented to the grand jury was derived from sources wholly independent of the compelled testimony. United States v. Brothers, 856 F.Supp. 380, 383 (M.D.Tenn.1993). The prosecution need not negate all abstract possibility that its evidence was tainted by exposure to the defendant’s immunized testimony, but it must show by a preponderance of the evidence that the evidence it used was derived from legitimate sources independent of the immunized testimony. United States v. Byrd, 765 F.2d 1524, 1529 (11th Cir.1985). When the court uses the correct legal principles, its determination of taint is a factual finding subject to review under the clearly erroneous standard. United States v. Harris, 973 F.2d 333, 337 (4th Cir.1992).
In this case, the state failed to sustain its burden of proof as set forth in Kastigar. The government’s mere representations in argument to the court that it did not make direct or indirect use of immunized testimony is generally regarded as insufficient to carry its burden under Kastigar. To prevail, the government must produce evidence, not just argument. See United States v. Harris, 973 F.2d at 337; See United States v. Tantalo, 680 F.2d 903, 908 (2nd Cir.1982); See United States v. Seiffert, 463 F.2d 1089, 1092 (5th Cir.1972). As the trial court noted, since the state never disclosed the evidence it used to obtain the grand jury indictment of Foster, it clearly did not meet its burden of affirmatively demonstrating that the indictment 113was based on evidence derived from wholly independent sources.[7] While that may have been the case, the state did *403 not demonstrate such at the Kastigar hearing.[8] After a thorough review of the record, we are satisfied that the trial court did not commit clear error in finding that the state failed to meet the burden of proof imposed under Kastigar.
The final issue for us to resolve is whether the trial court erred in quashing the Foster indictment as a remedy. The “use plus derivative use immunity” provided to Foster did not insulate him from prosecution for the offenses that were the subject of his testimony; it only precluded the state from using against him any advantage gained directly or indirectly from the compelled testimony. The state contends that quashing Foster’s indictment 114was not the proper remedy for a violation of La.Code Crim. P. art. 439.1. It argues that the proper procedural vehicle for a defendant to use in a case such as this is a motion to suppress the use at trial of any evidence obtained directly or indirectly through use of the compelled testimony. The state insists that the trial court exceeded its authority in quashing the indictment. Under the particular facts and circumstances of this case, we do not agree.
At the outset, we conclude that the remedy imposed by the trial court is not foreclosed by statute. La.Code‘Crim. P. arts. 532-584 set forth the grounds for a motion to quash. In State v. Tanner, 425 So.2d 760, 762 (La.1983), the court held that even though violation of an immunity agreement is not specifically listed in Article 532, use of a motion to quash as a remedy is not precluded. The Tanner court concluded that the defendant in that case, who had the benefit of complete “transactional immunity,” could not be prosecuted under any circumstances for the transaction charged and could seek to have his indictment quashed. While Tanner does not directly support the proposition that violation of a “use plus derivative use immunity” order may be enforced by a motion to quash, it does support the more general proposition that the lists of enumerated grounds for filing a motion to quash found in Articles 532-534 are not exclusive.
The Louisiana Supreme Court has not yet addressed the precise question of the propriety of an order quashing an indictment as a remedy for a violation of La. Code Crim. P. art. 439.1.[9] However, since a grant of statutory immunity in exchange for compelled testimony implicates federal constitutional guarantees, and since our statute is identical in all material respects to the federal immunity statute, federal jurisprudence on this issue is particularly instructive.
ik The fundamental rule set forth in Kastigar is that in order for a *404 statute granting “use plus derivative use immunity” to be constitutionally valid, the witness must be in the same position after testifying that he or she would have been if the testimony had not been compelled. Where the witness asserts that he would not have been indicted but for the direct or indirect use of his previously compelled testimony, and where the government cannot affirmatively prove the contrary, arguably the only manner of restoring the witness to the pre-immunity position is to quash the indictment. This is particularly true since the reach of Kastigar goes far beyond precluding the direct use of the testimony or evidence compelled. In Kastigar, the court cautioned that the total prohibition on use of compelled testimony provides a comprehensive safeguard, barring its use as an “investigatory lead” and also barring the use of any evidence obtained by focusing an investigation on a witness as a result of compelled disclosures. In Hubbell, where the government could not prove that it would have been able to obtain an indictment of the witness without the compelled testimony, the court held:
Kastigar requires that respondent’s motion to dismiss the indictment on immunity grounds be granted unless the Government proves that the evidence it used in obtaining the indictment and proposed to use at trial was derived from legitimate sources “wholly independent” of the testimonial aspect of respondent’s immunized conduct ....
530 U.S. at 45, 120 S.Ct. at 2048.
The holding of the United States Supreme Court in Hubbell appears to fully answer the question. Direct, indirect, or derivative use of compelled testimony in obtaining an indictment justifies dismissal of the indictment. In defending against a motion to quash an indictment, the government bears the burden of proving that the evidence used to obtain the indictment was derived from sources wholly independent of the immunized testimony. 11R Numerous federal courts have employed the remedy of quashing an indictment when the government is unable to demonstrate that the indictment did not emanate directly or indirectly from immunized testimony.[10]
Louisiana appellate courts addressing the question of an appropriate remedy for violation of La.Code Crim. P. art. 439.1 prior to the decision in Hubbell reached varying results. In State v. Parker, 625 So.2d 1364 (La.App. 1st Cir.1993), writ denied, 93-2832 (La.2/25/94), 632 So.2d 761, the defendant filed a motion to quash his indictment on the basis of an earlier grant of immunity. This court concluded that the grant of immunity was predicated on certain conditions that were not complied with, and for that reason, prosecution was not precluded by the previous grant of immunity. The court expressed the view that when only “use plus derivative use immunity” is granted, the correct procedure by which to challenge an indictment allegedly returned in violation of a statutory grant would be a motion to suppress any evidence derived directly or indirectly therefrom. State v. Parker, 625 So.2d at 1368. However, because the case was decided on other grounds, this expression is *405 dicta and we are not bound by it.[11]
In State v. Delcambre, 97-1447, pp. 3-10 (La.App. 3rd Cir.4/29/98), 710 So.2d 846, 848-851, the court similarly opined that quashing an indictment was not an appropriate remedy. The court cited La.Code Crim. P. art. 442, which provides that no indictment shall be found invalid on the 117grounds that it was based in whole or in part on illegal evidence. The court also reasoned that a defendant does not generally have a constitutional right to challenge an indictment by asserting the illegality of the evidence that was presented to the grand jury. See United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (denying a challenge to an indictment based on evidence obtained through an unconstitutional search and seizure); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (denying a challenge to an indictment based on hearsay evidence). However, the Delcambre court did not have the benefit of the United States Supreme Court opinion in Hubbell, nor did it consider the rejection of the Calandror-Costello rule by most federal courts that have considered the issue in the context of violations of grants of immunity.[12] Moreover, the evidence presented at the Kastigar hearing in the Delcambre case arguably refuted the defendant’s claim that his grant of immunity was violated, such that no remedy was needed at all. In Delcambre, the prosecution submitted the transcript of the entire proceedings before the grand jury that indicted the defendant. The transcript demonstrated that the prosecution used numerous sources other than the compelled testimony. It was undisputed that the compelled testimony was referred to before the indicting grand jury in only two instances, both of which were innocuous. The court found that there was an abundance of other testimony introduced at the grand jury proceeding. Since the court found that the government bore its burden of proving that the indictment was not based on the immunized statement, it was unnecessary for the court to reach the question of which remedy was available to the trial court. Accordingly, that portion of the Delcambre opinion addressing the issue before us is dicta.
|isln State v. Lehrmann, 532 So.2d 802, 807-809 (La.App. 4th Cir.), writ denied, 533 So.2d 364 (La.1988), a different conclusion was reached. In that case, the appellate court quashed defendant’s indictment, finding that the state did not bear its burden of affirmatively proving that the indictment was secured based on evidence wholly independent from the evidence given pursuant to a grant of use immunity.
Although we are not bound by the views expressed in dicta in Parker and Delcam-bre, the instant case is distinguishable in that the state failed to provide the court with the evidence it intended to use to convict Foster and the source of the evidence so that the court could determine whether there was an improper connexity between the two in violation of the grant of immunity. Foster filed a “Motion to Quash, or for Other Appropriate Relief, and for Evidentiary Hearing,” asking the court to alternatively quash the indictment or suppress the evidence the government intended to use against him that had been obtained directly or indirectly from his compelled testimony. Had the state provided the court with the evidence it intend *406 ed to use to convict Foster and the source of the evidence, the court could have determined whether there was an improper con-nexity between the compelled testimony and the evidence obtained. In such a case, the appropriate remedy would be for the court to suppress any evidence obtained in violation of the grant of immunity. However, because the state failed to make such a disclosure at the Kastigar hearing, it was impossible for the court to make such a determination and suppress evidence improperly obtained. As a result, the only remedy the court could provide was to quash the indictment.
Although dismissal of an indictment is a harsh remedy, it is an appropriate remedy pursuant to the controlling jurisprudence of the United States Supreme Court in Hubbell and other persuasive decisions of the 113federal judiciary. Since the state did not produce any evidence whatsoever of what was used to obtain the grand jury indictment against Foster, it was impossible for the trial court to conclude that the compelled testimony was not used, directly or indirectly, in securing Foster’s indictment. Under the particular facts and circumstances of this case, the trial court did not err in concluding that the state failed to carry its burden of proof and in quashing the indictment.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. For a review of the federal jurisprudence that has developed in this area, see Richard J. Link, Effect of Defendant’s Immunized Statements on Testimony by Prosecution Witness—Post-Kastigar Cases, 122 A.L.R. Fed. 429 (1994).

. The trial court warned the prosecutor that introduction into evidence of Foster's September 1999 grand jury testimony would not be sufficient to enable her to determine whether the state made indirect or derivative use of the compelled testimony.

. The state took the position that it was up to the defendant to point out some particular advantage that the state gained through the use of Foster’s compelled testimony.

. La.Code Crim. P. art. 439.1 was enacted in 1972. It is identical in all essential respects to a parallel immunity provision in the federal Organized Crime Control Act of 1970, 18 U.S.C. § 6002. As a consequence, our courts have deemed federal jurisprudence surrounding the parameters of 18 U.S.C. § 6002 instructive in inteipreting the scope of La.Code Crim. P. art. 439.1, particularly since both enactments deal with the constitutional implications of extending immunity to a witness in exchange for precluding assertion of the privilege against self-incrimination. See State v. Lehrmann, 532 So.2d 802, 807-809 (La.App. 4th Cir.) writ denied, 533 So.2d 364 (La.1988). See also James E. Boren, Comment, Constitutional Considerations of Federal and State Testimonial Immunity Legislation, 36 La.L.Rev. 214, 227-232 (1995).

. The hearing to determine whether the state can bear its affirmative burden of proof is commonly referred to as a Kastigar hearing. United States v. Jimenez, 256 F.3d 330, 348 (5th Cir.2001).

. In Edmondson, our Supreme Court held that the defendant was not entitled to a Kasti-gar hearing because the immunity at issue in that case was not compelled by a court order but was extended pursuant to an agreement voluntarily entered into between the defendant and the state. In discussing the issue, the court noted that compulsion is the essential factor necessary for a defendant to invoke a Kastigar hearing. Edmondson, 97-2456 at p. 9, 714 So.2d at 1238.

. In this case, the defendant suggested that the decision of Fowler and Ricci to implicate Foster may have resulted directly or indirectly from Foster's testimony. For a case involving a similar issue, see United States v. Kurzer, 534 F.2d 511, 517-518 (2nd Cir.1976). Where the issue is whether testimony of a coconspirator was motivated by immunized testimony, the prosecution should detail its evidence against the coconspirator and prove it did not come from the immunized testimony. The coconspirator should be questioned as to his motivations for implicating the party whose testimony was compelled. United States v. Hampton, 775 F.2d 1479, 1488-1489 (11th Cir.1985). The prosecutor can prove that an indictment did not result from compelled testimony through the testimony of the coconspirators. United States v. Biaggi, 909 F.2d 662, 689 (2nd Cir.1990) cert. denied, 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991); United States v. Brimberry, 803 F.2d 908, 916 (7th Cir.1986), cert. denied, 481 U.S. 1039, 107 S.Ct. 1977, 95 L.Ed.2d 817 (1987). Numerous indirect uses of compelled testimony have been found problematic. For instance, use of grand jury testimony to refresh the recollections of witnesses who later testify may be a violation. United States v. Kristel, 762 F.Supp. 1100, 1108 (S.D.N.Y.1991). Use of immunized information by a prosecutor to focus his questions to a witness might constitute a violation. United States v. Carpenter, 611 F.Supp. 768, 780 (N.D.Ga.1985). Prose *403 cutors can offer evidence that they have not made use of immunized testimony to defeat a challenge by a defendant. See United States v. Bartel, 19 F.3d 1105, 1112 (6th Cir.1994), where the court heard testimony of an investigator even though the defendant's immunized statement did not disclose any overtly incriminatory information. In United States v. Garrett, 849 F.2d 1141, 1142 (8th Cir.1988), co-conspirators who implicated the defendant were proven to have done so for reasons other than his compelled testimony.

. Because the state did not disclose the evidence it used to obtain the indictment or offer any witnesses for examination, we do not reach the issue of whether the state may have made use of the immunized testimony in non-evidentiary ways and the extent to which such use falls within the reach of Kastigar. See Harris, 973 F.2d at 337. Evidentiary use could conceivably include assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy. United States v. McDaniel, 482 F.2d 305, 311 (8th Cir. 1973).

. In Edmondson, the defendant sought only an order suppressing evidence.

. A distinction has been drawn between the general rule that a facially valid indictment based on evidence obtained in violation of a defendant’s Fifth Amendment privilege may not be dismissed and the situation where evidence obtained through a statutory grant of immunity is used to obtain an indictment. See e.g., United States v. Garrett, 797 F.2d 656, 660 (8th Cir.1986); United States v. Zielezinski, 740 F.2d 727, 732 (9th Cir.1984); United States v. Hampton, 775 F.2d 1479, 1489 (11th Cir.1985); United States v. Beery, 678 F.2d 856 (10th Cir.1982).

. In Parker, the defendant violated the terms of his immunity agreement, therefore it was unnecessary for the court to determine the correct procedural vehicle to challenge the revocation of immunity. State v. Parker, 625 So.2d at 1368.

. See cases cited in footnote 10.