LEDET, J.,
dissents with reasons.
|, The State seeks review of the trial court’s October 16, 2014 denial of the State’s motion to compel testimony under grant of use and derivative use immunity pursuant to La.C.Cr.P. art. 439.1. For the reasons that follow, I would grant the State’s writ application.

PROCEDURAL HISTORY

On October 12, 2012, a grand jury indictment was issued charging Marquis Mathews and Desmond Lange with the June 22, 2012 second degree murder of Marc Canty. On December 3, 2013, the State moved to sever the defendants for trial. The motion was granted.
On August 13, 2014, the State filed a Memorandum of Law wherein it informed that it intended to call Desmond Lange as a witness in the trial of Marquis Mathews and compel his testimony under the provisions of La.C.Cr.P. art. 439.1. Following a hearing, the district court found that any ruling would be premature because a motion to compel signed by both the District Attorney and the Attorney General and conveying immunity had not been filed. After the State confirmed that it did not intend to dismiss its case against Desmond Lange, the district court ruled that to the extent the State’s memorandum constituted a motion, it was denied.
|aOn October 16, 2014, a motion to compel Desmond Lange’s testimony was filed under the signatures of the District Attorney and the Attorney General. The motion granted use and derivative use immunity for any testimony provided. The district court denied the motion to compel. The district court confirmed that it believed that Mr. Lange’s testimony could only be compelled if full immunity is conferred and that use and derivative use immunity are insufficient to override Mr. Lange’s Fifth Amendment privilege against self-incrimination. The State seeks review from this ruling.

STATEMENT OF THE FACTS

In its Memorandum of Law filed on August 13, 2014, the State outlined the facts of the offense and the investigation as follows:
*1077 On June 22nd 2012, Marc Canty was shot multiple times in the 2100 block of Selma Street and was pronounced dead on the scene. Prior to being killed, Marc Canty called 911 and informed the operator that he was being followed by Marquise (sic) Matthews. Mr. Canty informed the operator that he believed Mr. Matthews was armed with a handgun and he feared that Mr. Matthews wanted to do him harm. Mr. Canty also informed the operator that a Gold Ford Taurus was following him. Approximately fifteen seconds before he is [sic] shot, Mr. Canty informed the operator that Mr. Matthews got in the Gold Taurus and that the car then drove past him at a high speed. Seconds later, Mr. Canty states ■ “they started shooting.” Mr. Canty is found dead moments later.
Detective Jacob Lundy was assigned to be the lead detective in this case. Detective Lundy met with an eye witness who stated that he heard the shots, saw a Gold Ford Taurus “lying in wait,” and then saw two suspected gunmen run towards the car. The witness further stated that at least one of the gunmen got in the car and the car fled the scene. After speaking with the victim’s mother, Detective Lundy developed Desmond Lange as the suspected driver of the Ford Taurus. Upon relocating to Mr. Lange’s home, Detective Lundy noticed a Gold Ford Taurus in the drive way. Detective Lundy knocked on the door and was greeted by Desmond Lange and his father. Desmond Lange agreed to give a statement to Detective Lundy. Mr. Lange stated that he dropped Mr. Matthews off near the scene of the murder a few minutes before the murder. He then stated that he did not see Mr. Matthews again that day. Detective Lundy then asked Mr. Lange if he would be willing to give a statement at NOPD headquarters. Mr. Lange agreed ... ■ advised of his rights per Miranda, Mr.. Lange gave a second statement to Detective Lundy. Mr. -Lange initially stated that he dropped Mr. Matthews off a-few blocks from the scene of the |amurder and . did not see him again on the day of the homicide. Mr Lange then changed his story and stated that a few minutes after he dropped Mr. Matthews off, he received an unexpected phone call from Mr. Matthews’in which Mr. Matthews requested he come pick him up at a second location, which is also just two blocks from where Mr. Canty was killed. Mr. Lange stated that he then picked up Mr. Matthews at the' desired location. Mr. Lange also stated that Mr. Matthews had stated to him on a previous occasion that he wished to kill Mr. Canty.

DISCUSSION

The governing statutory provision is La. C.Cr.P. art. 439.1, which provides:
A. In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a grand jury of the state, at any proceeding before a court of this state, or in response to any subpoena by the attorney general or district attorney, the judicial district court of the district in which the proceeding is or may be held shall issue, in accordance with Subsection B of this article, upon the request of the attorney general together with the district attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in Subsection C of this article.
B. The attorney general together with the district attorney may request *1078 an order under Subsection A of this article when in his judgment
(1) the testimony or other information from such individual may be necessary to the public interest; and
(2) such individual has refused dr is likely to refuse to testify or provide other information on the basis of his privilege against self incrimination.
C. The witness may not refuse to comply with the order on the basis of his privilege against self incrimination, but no testimony or other information compelled under .the order, or any information directly or indirectly derived from such testimony or other information, may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement or otherwise failing to comply with the order.
D. Whoever refuses to comply with an order as hereinabove provided shall be adjudged in, contempt of court and punished as provided by law.
Un State v. Foster, 02-1259, pp. 7-8 (La.App, 1 Cir. 2/14/03), 845 So.2d 393, 399-400, the First Circuit set out the pertinent constitutional and statutory law:
The Fifth Amendment to the United States Constitution provides that no person shall be compelled to bear witness against himself. This privilege has been extended to the states through the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The privilege against self-incrimination is also guaranteed in Article 1, Section 16 of the Louisiana Constitution of 1974. However, notwithstanding the constitutionally-guaranteed privilege, an individual can be compelled to testify if granted immunity coextensive with the scope of the privilege . against self-incrimination. Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 54, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964).
t¡4 ⅝ . ⅝
Where a formal statutory grant of immunity is extended, the Fifth Amendment is necessarily implicated. State v. Edmondson; 97-2456, p. 6 (La.7/8/98), 714 So.2d 1233, 1237....
* * *
In Edmondson, the Louisiana .Supreme Court explained the constitutional implications of immunity statutes such as the one adopted and embodied in La.Code Crim. P. art. 439.1:
Statutory immunity is what .-may be granted , by statute when a witness is summoned to- testify at a trial or before a grand jury and refuses to do so by invoking his Fifth Amendment privilege against self-incrimination. The State, through the explicit authorization of an immunity statute, may then grant the type of immunity afforded by the statute, and may compel the recalcitrant witness’ testimony, under penalty of contempt, and over the witness’ invocation of his or her right to remain silent. However, the immunity provided to the witness under the statute .in order to compel his or her testimony must be at a minimum co-extensive with the asserted Fifth Amendment privilege which it has displaced. Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Therefore, the United States Supreme Court has held that where a witness’ testimony is compelled through a statutory grant of immunity, prosecutorial - authorities are prohibited from using the compelled testimony itself or the fruits derived from the testimony in a subsequent prosecution of the compelled witness. By preventing the use of the compelled *1079 statement in any respect, the immunity required by Murphy insures that the testimony cannot lead to the infliction of criminal penalties on the compelled witness. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); In re Parker, 357 So.2d 508 (La.1978). (Footnote omitted.)
97-2456 at pp. 6-7, 714 So.2d at 1237.
In the Kastigar ease,, the United States Supreme Court clarified that the Fifth Amendment did not require that a defendant be granted full immunity in order to compel his testimony, holding that “immunity from use and derivative use is coextensive with the scope' of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege.” 406 U.S. at 453, 92 S.Ct. at 1661. The Supreme Court expressly noted that “full immunity from prosecution for the offense to which the compelled testimony relates, affords, the witness considerably broader protection j;han does the Fifth Amendment privilege.” Id. .
Applying these principles, I would find that the district court erred in denying the motion to compel. The motion to compel is in full compliance with La.C.Cr.P. art. 439.1. The Fifth Amendment does not require that Mr. Lange, be afforded full immunity in order for his testimony to be compelled. The Louisiana Legislature enacted La.C.Cr.P. art. 439.1 in 1972, and its legitimacy has never been questioned. Accordingly, L would grant the State’s writ application and reverse the district court’s ruling denying the motion to compel.'