CARTER, C.J.
|sThis case arises in the context of a public records request. At issue is whether the Attorney General’s investigative file into the circumstances surrounding numerous deaths at Tenet Health System Memorial Health Center following Hurricane *104 Katrina is presently subject to disclosure under the Louisiana Public Records Act. Concluding the file presently pertains to reasonably anticipated criminal litigation, we hold that the file is exempt from disclosure pursuant to La.Rev.Stat. Ann. § 44:3 A(l). So holding, we reverse the district court judgment.

FACTS AND PROCEDURAL HISTORY

Hurricane Katrina hit New Orleans, Louisiana in August 2005. In the immediate aftermath of the storm, forty-three bodies were removed from Tenet Health System Memorial Medical Center, Inc. (Tenet-Memorial). LifeCare Hospitals of New Orleans, LLC (LifeCare) operated a separate acute care facility on the seventh floor of Teneb-Memorial, and several of the deceased were LifeCare patients.
In September 2005, Charles Foti, then Louisiana Attorney General (AG), began an investigation into the Tenet-Memorial deaths. The AG investigation began as a Medicaid fraud investigation and culminated in the accumulation of thousands of documents and the July 17, 2006, arrests of three medical professionals for second degree murder.
Following the arrests, AG Foti gave a complete copy of the investigative file to the Orleans Parish District Attorney’s Office. In February 2007, then Orleans Parish District Attorney (DA) Eddie Jordan empanelled a special investigative grand jury to consider the matter. Two | f,healthcare professionals were granted immunity in exchange for their testimony. On July 24, 2007, the special grand jury returned a “no true bill,” refusing to indict the remaining healthcare professional.
Thereafter, the Cable News Network (CNN), the Times-Picayune, LLC (Times-Picayune), and others submitted numerous public records requests to the AG requesting production of the investigative file. In response, the AG filed suit seeking a declaratory judgment clarifying what portions of its investigative file, if any, were subject to release under the Public Records Act.
Several healthcare professionals, who worked at Tenet-Memorial during and after Hurricane Katrina and who referred to themselves only as Jane and John Does, filed petitions seeking a declaratory judgment that the AG and DA investigative files are not subject to disclosure under the Public Records Act. Named as defendants were the AG, the DA, the Orleans Parish Coroner, Rose Agnes Savoie (a LifeCare patient who died at Tenet-Memorial in the aftermath of Hurricane Katrina), CNN, Times-Picayune, and “all other persons or entities who have made requests under the Louisiana Public Records Act.” In response, CNN and Times-Picayune filed a cross-claim and a motion for a writ of mandamus and preliminary injunction seeking to compel the release of the investigative file. Several interested parties (including the Louisiana State Board of Nursing, Lori Budo, Cheri Landry, LifeCare Hospitals of New Orleans, LLC, Tenet-Memorial, and Dr. Anna Pou) were allowed to intervene.
The AG filed under seal a copy of his investigative file, including an index. On September 19, 2007, the trial court signed a judgment holding that |7the majority of the investigative file was public record and subject to release. The district court denied the motion for a writ of mandamus and preliminary injunction. Numerous parties sought supervisory review with this court, and on April 18, 2008, this court granted the writs in part and denied the writs in part, giving identical reasons for each application. A majority reasoned that because there is no prescriptive period for homicide charges, criminal litigation was not finally adjudicated by the grand *105 jury’s return of a no true bill. Accordingly, the investigative file was exempt from disclosure as it pertains to reasonably anticipated criminal litigation pursuant to La. Rev.Stat. Ann. § 44:3 A(l). The majority further concluded that the investigative file was prepared in conjunction with, and in preparation for, the eventual presentation to a grand' jury. Thus, the investigative file contents were shielded from disclosure by persons present at the grand jury meeting or having confidential access to information concerning the grand jury proceeding pursuant to La.Code Crim. Proc. Ann. art. 434.
CNN and Times-Picayune sought review with the Louisiana Supreme Court. On July 1, 2009, the supreme court reversed and set aside the decisions of the district court and this court. A Matter Under Investigation, 07-1853 (La.7/1/09); 15 So.3d 972, 994. The supreme court concluded that La.Rev.Stat. Ann. § 44:3 A(l) “exempts from the required disclosure under the Public Records Act records held by the offices of the Attorney General and the District Attorney that pertain to any criminal litigation which can be reasonably anticipated until such litigation has been finally adjudicated or otherwise settled.” Investigation, 15 So.3d at 994. The supreme court set forth an illustrative list of factors for a court to consider in determining 18whether criminal litigation is reasonably anticipated. Investigation, 15 So.3d at 992. Finding the record in the instant case was insufficient to make the determination, the matter was remanded to the trial court for further proceedings. Investigation, 15 So.3d at 994.
On remand, the district court considered additional evidence, including the testimony of current AG James D. “Buddy” Caldwell and current DA Leon A. Cannizzaro.[1]
On August 30, 2010, the district court signed a “Final Judgment” ordering, adjudging, and decreeing in pertinent part that:
[The] investigatory file created by the Louisiana Attorney General in connection with his investigation of certain deaths occurring at Memorial Medical Center during the days following Hurricane Katrina does not pertain to criminal litigation which is either pending or which can be reasonably anticipated, and as a result, the exemption contained in Louisiana Revised Statutes section 44:3(A)(1) does not apply.
[The] investigatory file created by the Office of the Attorney General, and held by the Office of the Attorney General and the District Attorney for Orleans Parish, is non-exempt from production under the Public Records Act, as such file involves criminal litigation which is not “reasonably anticipated” as defined by the Louisiana Supreme Court in In re A Matter Under Investigation, 2007-1853 (La.7/1/09); 15 So.3d 972.
As this court finds that La. R.S. 44:3(A)(1), as asserted by the Attorney General for the State of Louisiana and the District Attorney for Orleans Parish, does not contain a reasonable and viable exception to production, and such exception has not been sufficiently borne by the Attorney General for the State of Louisiana and the District Attorney for Orleans Parish.
[The] Court’s prior Judgment of September 19, 2007 is hereby re-issued by this Court, except that in light of the Supreme Court’s ruling vacating the August 16, 2007 Order of Judge Calvin Johnson of the Orleans Parish Criminal District Court, any references made to *106 that order in the Court’s prior Judgment are now moot.
[The] Times-Picayune, LLC and CNN request to recover reasonable attorney fees and costs pursuant to Louisiana Revised ^Statutes section 44:35 is pretermitted pending review of the judgment herein.
[Because] this Court has re-issued its prior Judgment dated September 19, 2007 that “patient medical records ... shall not be released,” Memorial Medical Center’s Motion in Limine is DENIED.
[The] Motion to Dismiss; Alternatively, For Index and Protective Order filed by Lori Budo, Cherie Landry, and Jane and John Does, and the Motion to Strike filed by The Times-Picayune and CNN, are DENIED.
Appeals were filed by unnamed John and Jane Does, Cheri Landry, Lori Budo, Dr. Anna Pou, the District Attorney for the Parish of Orleans, and Attorney General James D. “Buddy” Caldwell (Appellants).[2] Collectively, this court is presented with the following issues:
1. Did the district court fail to give proper consideration to the factors set forth by the Louisiana Supreme Court in In re A Matter Under Investigation, 07-1853 (7/1/09); 15 So.3d 972, 992, in deciding that criminal litigation is not reasonably anticipated and the exemption set forth in La.Rev.Stat. Ann. § 44:3 A(l) is inapplicable?
2. Did the district court judgment reach beyond the scope of the Louisiana Supreme Court’s remand and fail to apply the law of the case in that it addresses issues of grand jury secrecy as set forth in La.Code Crim. Proc. Ann. art. 434, a matter that already has been decided by this court?
3. Did the trial court predetermine the matter prior to the contradictory hearing?
4. Did the trial court err in failing to consider the work product exception to the Public Records Act?
5. Did the trial court err in forcing the district attorney to reveal the government’s evidence and strategies and the nature, scope, direction, and focus of its investigations?
6. Did the trial court err in failing to recognize that the Does’ privacy interests shield portions of the attorney general’s investigative file from disclosure?
| inTimes-Picayune and CNN (Appellees) answered the appeal, requesting additional attorney fees pursuant to La.Rev.Stat. Ann. § 44:35.
For the reasons that follow, we reverse the district court judgment, render judgment in favor of the Appellants, and deny Appellees’ answer to the appeal.

DISCUSSION

Reasonably Anticipated Criminal Litigation

The investigative file at issue is a public record that any person may obtain a copy of unless the Public Records Act or another law specifically provides otherwise. La.Rev.Stat. Ann. § 44:31; Investigation, 15 So.3d at 989. The right of the public to access public records is a fundamental right guaranteed by the Louisiana Constitution. La. Const. Ann. art. XII, *107 § 3. The public’s right of access to a public record must be construed liberally in favor of free and unrestricted access, and access can be denied only when a law specifically and unequivocally provides otherwise. Title Research Corp. v. Rausch, 450 So.2d 933, 936 (La.1984).
The Louisiana Public Records Act contains a specific exemption for records pertaining to reasonably anticipated criminal litigation. See La.Rev.Stat. Ann. § 44:3 A(l).
The plain language of the statute provides that nothing in the Public Records Act shall require disclosures of records held by the offices of the AG or the DA whén the records pertain to pending or reasonably anticipated criminal litigation until the criminal litigation has been finally adjudicated or otherwise settled.
Investigation, 15 So.3d at 991. Everything in the AG’s investigative file pertained to criminal litigation; therefore if criminal litigation is pending or reasonably anticipated, then the entire file is covered by the La.Rev.Stat. |nAnn. § 44:3 A(l) exemption, and at this time, disclosure is not required under the Public Records Act. Investigation, 15 So.3d at 991.
The burden of proving that the file is not subject to inspection, copying, or reproduction by a member of the public rests with the custodian. La.Rev.Stat. Ann. § 44:31(3). Whenever there is any doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public’s right to access. Landis v. Moreau, 00-1157 (La.2/21/01); 779 So.2d 691, 694.
Herein, there is no criminal litigation pending; therefore, the sole issue is whether criminal litigation can be reasonably anticipated such that the exemption set forth in La.Rev.Stat. Ann. § 44:3 A(l) applies. “Reasonably anticipated” has been defined as reasonably foreseen or contemplated. Investigation, 15 So.3d at 991. The custodian need not prove that criminal litigation will be pursued or will almost certainly be pursued. Investigation, 15 So.3d at 991. Rather, the exemption applies if it can be reasonably anticipated that “criminal litigation will be brought against some potential criminal defendant who was part of the investigation.” Investigation, 15 So.3d at 991.
The determination of whether a particular record falls within the exemption provided by La.Rev.Stat. Ann. § 44:3 A(l) must be made on a case-by-ease basis. Louisiana Capital Assistance Center v. Riley, 10-0733 (La.App. 4 Cir. 12/15/10); 54 So.3d 177, 179, writ denied, 11-0115 (La.2/25/11); 58 So.3d 459. This determination requires more than judicial acceptance of a prosecutor’s assertion of privilege. Conella v. Johnson, 345 So.2d 498, 501 (La.1977); Cormier v. Public Records Request of DiGuilio, 553 So.2d 806, 807 (La.1989); Investigation, 15 So.3d at 991. Rather, the determination must be made following a contradictory hearing where there is an opportunity for cross-examination and the presentation of evidence to contradict the claim of privilege. Investigation, 15 So.3d at 991-92. A court should be guided by objective factors in determining whether criminal litigation is reasonably anticipated pursuant to La.Rev.Stat. Ann. § 44:3A(1), such as:
1. Whether criminal litigation may still be initiated given the prescriptive period of the offense to be charged;
2. The temporal and procedural posture of each case;
3. Whether criminal litigation has been finally adjudicated or otherwise settled;
4. The assertion of the prosecutorial authority as to its intent or lack *108 thereof to initiate criminal litigation;
5. Whether the prosecutorial authority has taken objective, positive, and verifiable steps to preserve its ability to initiate criminal litigation, including but not limited to: preserving evidence, maintaining contact with witnesses, and continuing an investigation;
6. The time it would take to appropriately investigate and try an offense;
7. The prosecutor’s inherent authority to determine whom, when, and how he will prosecute;
8. The severity of the crime;
9. The availability of witnesses, victims, and defendants;
10. The spoliation of evidence;
11. The reasonable likelihood that a missing witness or an absconded defendant might be found; and
12. The reasonable likelihood that additional witnesses might be willing to come forward with the passage of time.
Investigation, 15 So.3d at 992.
11SWhether criminal litigation can be reasonably anticipated is a mixed question of fact and law. Mixed questions of fact and law generally are subject to the manifest error standard of review. See Dermna v. Automobile Club Inter-Insurance Exchange, 08-2810 (La.6/26/09); 15 So.3d 95, 100 n. 4. Herein, however, the dispositive (or relevant) facts are not disputed. Where the relevant facts are not in dispute, the issue can be decided as a matter of law, and the review is de novo. Demma, 15 So.3d at 100 n. 4. As a reviewing court, we decide whether the undisputed, relevant facts satisfy the custodian’s burden of proving that criminal litigation can be reasonably anticipated as provided in La.Rev.Stat. Ann. § 44:3 A(l) in light of the objective factors set forth by the Louisiana Supreme Court in Investigation, 15 So.3d at 992.
In evaluating the issue, the first consideration is whether criminal litigation may still be initiated given the prescriptive period of the offense to be charged. Assistant AG Arthur Schafer said within a month or two into the investigation, he personally felt he was investigating murder. Three individuals were arrested for second degree murder. DA Cannizzaro stated: “I do believe we have a homicide. I do believe human beings were killed as a result of actions of doctors.” In the words of AG Caldwell, “[Mjurder eases are never over.” There is no time limitation upon the institution of prosecution for any crime punishable by death or life imprisonment, which includes the crimes of first and second degree murder. La.Code Crim. Proc. Ann. art. 571; La.Rev.Stat. Ann. § 14:30 C; La.Rev.Stat. Ann. § 14:30.1 B.
Second, a court should consider the temporal and procedural posture of the case. The alleged crimes occurred in September 2005. The initial | ^investigation by the AG’s office began in 2005 and resulted in the arrests of three healthcare professionals in July 2006. Once the arrests were effected by the AG’s office, the DA became involved. The investigative grand jury convened in February 2007, and testimony before the grand jury began in May 2007. Two of the arrestees were granted immunity in exchange for their testimony before the grand jury. On February 24, 2007, the grand jury returned a no true bill against the third arrestee. Shortly thereafter, CNN, Times-Picayune and others submitted public records requests to the AG requesting copies of its investigative file. In response, the AG filed the present suit for declaratory relief on August 10, 2007, just *109 shy of the two-year anniversary of the alleged crimes.
A third consideration is whether criminal litigation has been finally adjudicated or otherwise settled. There have been no final adjudications in this case; nor is there affirmative evidence that the case is settled as against the three arrestees or against any unnamed potential defendants. The grand jury returned a no true bill against one arrestee; however, the failure to return a true bill does not prohibit the district attorney’s office from seeking a future indictment against that person. The law is clear that “[t]he failure or refusal of a grand jury to indict a defendant does not preclude a subsequent indictment by the same or another grand jury, or the subsequent filing of an information or affidavit against him, for the same offense.” La.Code Crim. Proc. Ann. art. 386. Assistant AG Schafer testified that after the return of the no true bill, the AG acquiesced in the expungement of the arres-tee’s arrest record. However, no law has been cited for the proposition that acquiescence in an expungement bars prosecution of the same individual by someone else.
|1sAt least two individuals were granted immunity in exchange for their testimony before the grand jury. Although the type of immunity granted is unclear, Louisiana jurisprudence recognizes two types of immunity: “transactional immunity” and “use plus derivative use immunity.” “Transactional immunity” affords complete immunity from prosecution on the charged offense. State v. Foster, 02-1259 (La.App. 1 Cir. 2/14/03); 845 So.2d 393, 399, writ denied, 03-0775 (La.10/3/03); 855 So.2d 308. “Use plus derivative use immunity” allows for prosecution on the charge, but the state cannot “use” evidence provided by the defendant as a result of the immunity agreement or any information derived therefrom. Foster, 845 So.2d at 399. When a person is compelled to testify before the grand jury in contravention of the right against self-incrimination, “no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information, may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement or otherwise failing to comply with the order.” La.Code Crim. Proc. Ann. art. 439.1 C. If the government has independent evidence, a party who has testified under compulsion may still be prosecuted. Foster, 845 So.2d at 399.
Perhaps more relevant to the case at hand is the fact that the grand jury’s return of a no true bill against one arres-tee and the grant of immunity to at least two grand jury witnesses have no bearing on the DA’s authority to pursue charges against others. The AG’s investigation was not limited to the three arrestees. As AG Caldwell explained, there are other potential defendants. For example, in 2009, DA Cannizzaro asked Coroner Franklin 11fiE. “Frank” Minyard for a classification on the death of a patient that was not under the care of those arrested in 2006. However, neither the AG nor the Orleans Parish DA is presently investigating the deaths at TeneR-Memorial.
Fourth, has the prosecutorial authority asserted its intent or lack thereof to initiate criminal litigation? AG Caldwell testified that his office operates as an investigative body and whether criminal litigation is to be instigated is within the exclusive province of the district attorney. DA Cannizzaro cautioned that there is a difference between the existence of a homicide and whether the state has a case that it can pursue in a court of law. He candidly stated, “At this point in time, I do not believe I have sufficient evidence to go forward with the prosecution; so, there *110 fore, I would say that I don’t have the intention at this present time to prosecute this case.” However, he offered that he “cannot say the case is over,” as he has “an obligation to continue to investigate.”[3]
The supreme court directed that a court should consider whether the prosecutorial authority has taken objective, positive, and verifiable steps to preserve its ability to initiate criminal litigation. The current AG and DA both asserted the La.Rev.Stat. Ann. § 44:3 A(l) “reasonably anticipated criminal litigation” exemption while under oath.[4] At a December 2009 motions hearing, Renee Smith, representing the Orleans Parish District |17Attorney’s Office, stated that her office did not have either the original or a copy of the AG’s investigative file. However, during the July 2010 bench trial, DA Cannizzaro indicated that the investigative file is comprised of three large boxes that he keeps in his office, to the right of where he sits. As a further indication of his commitment to potential criminal litigation, DA Cannizzaro referenced an August 25, 2009, New York Times article authored by Sheri Fink in which Dr. Ewing Cook, formerly associated with Tenet-Memorial, stated that patients at the hospital were “killed.” One patient named by Dr. Cook was Jannie Burgess, resulting in DA Cannizzaro asking Coroner Dr. Minyard to review the classification of Burgess’s death. As DA Cannizzaro explained, “from my perspective, I see that we have a doctor essentially confessing in the newspaper to what we believe was criminal conduct, and I thought it required that we do more, and we did more than just sort of let that slide.” However, Dr. Minyard declined to classify Ms. Burgess’s death as a homicide, and her death remains “unclassified.” As a result, DA Cannizzaro did not pursue a homicide charge. Lastly, DA Cannizzaro indicated he has met with attorneys for “potential defendants,” and he never expressed an intention not to prosecute those individuals.
The sixth consideration is the amount of time it would take to appropriately investigate and try an offense. Neither the AG nor the DA is presently investigating the case. The DA candidly admitted he needs new evidence such as a confession or new scientific technology to cause him to reopen the criminal investigation. However, it is clear that much investigation already has taken place. Thousands of pages of evidence were already accumulated during the AG’s year-long investigation. All of this | isevidence has been preserved. There are other identified witnesses that have not yet been interviewed, but not because they are unaccounted for.
The supreme court recognized the prosecutor’s inherent authority to determine whom, when, and how he will prosecute. The DA has the entire charge and control of every criminal prosecution instituted or pending in his district and determines “whom, when, and how he shall prosecute.” La.Code Crim. Proc. Ann. art. 61. The Louisiana constitution provides that, except as otherwise provided for in the constitution, a district attorney, or his des *111 ignated assistant, has “charge of every criminal prosecution by the state in his district.” La. Const. Ann. art. V, § 26(B). Specific to the Parish of Orleans, the DA or his designated assistant “shall have charge of every criminal prosecution by the state in the Criminal District Court for the Parish of Orleans ... [and] shall be the representative of the state before the grand juries in the parish of Orleans and shall be the legal advisor to the grand juries.” La.Rev.Stat. Ann. § 16:1 C. DA Cannizzaro was clear that he believes it is his duty to continue the investigation into the incident at Tenet-Memorial.
Eighth, the supreme court indicated that a court should consider the severity of the alleged crime. This occurrence involved the deaths of multiple elderly or infirm individuals whose care had been entrusted to medical personnel. AG Caldwell explained there were a “huge” number of deaths at Tenet-Memorial. Assistant AG Schafer testified that 43 bodies were removed from Tenet-Memorial Medical Center on September 12, 2005. DA Cannizza-ro explained that several individuals were “killed” as the result of certain medications they were given while in Teneb-Memorial. In response |13to questioning, DA Canniz-zaro acknowledged that the killing of a human being is the most serious thing that prosecutors deal with and that the killing of multiple human beings in and around the same occurrence is even more severe. AG Caldwell cautioned that this case may not be limited to the three individuals arrested for second degree murder on July 17, 2006, as others were involved. See La.Rev.Stat. Ann. § 14:24 (“All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.”)
Ninth, the court should inquire about the availability of witnesses, victims, and defendants. Closely related to this inquiry is the eleventh consideration set forth by the Louisiana Supreme Court — whether a missing witness or an absconded defendant might be found. Assistant AG Schafer was involved in the original Tenet-Memorial investigation. Schafer testified that he personally interviewed over 70 witnesses. Approximately 100 witnesses were interviewed during the AG’s year-long investigation beginning in September 2005. Schafer stated that other witnesses were available to interview; however, the AG’s office closed the investigation when the three arrests were effected in 2006. The decision to not continue interviewing witnesses was not due to the witnesses being unavailable. DA Cannizzaro testified that he has no evidence suggesting that any of the witnesses are unavailable or that the potential defendants have left the jurisdiction of the courts.
RnA tenth consideration is the spoliation of evidence. Assistant AG Schafer testified at the initial trial that the AG’s office made copies of everything, including images of the computers, computer documents, and charts returned to Tenet-Memorial and LifeCare. The AG’s office turned over a complete copy of its investigative file to the Orleans Parish District Attorney’s office. DA Cannizzaro testified that none of the investigative file had been lost or spoiled, and that the “file” consists of three large boxes, which he keeps in his personal office for ready access. AG Caldwell indicated that his office has kept its own file; the contents include copies and some original documents.
The twelfth and final query is the reasonable likelihood that additional witnesses might be willing to come forward with the passage of time. According to *112 DA Cannizzaro, the majority of evidence will come from hospital personnel and scientific evidence. In addition, there are numerous civil cases pending as a result of the events at Tenet-Memorial, and “[fit’s very possible” evidence could arise as the result of these eases. For example, Dr. Cook willingly spoke to a New York Times reporter, resulting in the 2009 article previously referenced. DA Cannizzaro stated, “I cannot predict the future.” However, informants will come forward and provide information to prosecutorial bodies. People on the streets have offered Cannizzaro tips. Although rare, coroners have changed the classification of a cause of death. DA Cannizzaro also noted that a reasonable expectation of prosecution is based on current scientific technology.
DA Cannizzaro and AG Caldwell raised additional concerns. DA Cannizzaro said the release of criminal investigative files sets a “horrible 12iprecedent,” providing the potential for the abuse of witnesses and the fear of retaliation. AG Caldwell cautioned that release of the criminal investigative file in this instance may “turn the judiciary into a public records request initiative” every time a grand jury returns a no true bill. Pursuant to La.Rev.Stat. Ann. § 44:3 F, the legislature has set forth a means whereby an investigative file can be obtained after the passage often years from “the date of death of a person by other than natural causes.” This right is not extended to the public at large but, rather, is limited to “certain members of the public whose right to access the information predominates; namely, the [immediate] family of the decedent.” Investigation, 15 So.3d at 993.
Appellees focus on whether it is reasonably anticipated that criminal litigation will be brought against the three medical professionals arrested in July 2006. However, the Louisiana Supreme Court instructs that the exemption applies if it is reasonably anticipated that “criminal litigation will be brought against some potential criminal defendant who was part of the investigation.” Investigation, 15 So.3d at 991 (emphasis supplied). On remand, extensive evidence was offered to establish that criminal litigation can be reasonably anticipated against some potential criminal defendant. Contra Louisiana Capital Assistance, 54 So.3d at 180 (“only evidence offered” was testimony that it is the policy of the district attorney that criminal litigation could be reasonably anticipated in any case where the litigation period has not legally prescribed). We find that the custodian has met its burden of proving that the file is not subject to inspection, copying, or reproduction due to the exemption set forth in La.Rev.Stat. Ann. § 44:3 A(l). See La.Rev.Stat. Ann. § 44:31(3).
|22The supreme court already has determined that “[everything in the file can be said to pertain to criminal litigation.” Investigation, 15 So.3d at 991. Because we conclude that criminal litigation can be reasonably anticipated in this case, “then the entire file is covered by the exemption and is not required to be disclosed under the Public Records Law at this time.” See Investigation, 07-1853 (7/1/09); 15 So.3d at 991. Accordingly, we pretermit discussion of the remaining issues. See Investigation, 15 So.3d at 993 (“finding that criminal litigation is reasonably anticipated would resolve the case”).

CONCLUSION

For the above stated reasons, the district court’s judgment is reversed and set aside, and judgment is rendered in favor of Appellants, declaring the entire investigative file exempt from disclosure at this time under the Public Records Law, specifically La.Rev.Stat. Ann. § 44:3 A(l). *113 The Tirnes-Pieayune, LLC and Cable News Network’s answer to the appeal is denied. Costs of this proceeding are assessed to the Times-Picayune, LLC and Cable News Network.
REVERSED AND RENDERED. ANSWER TO APPEAL DENIED.
WELCH, J., dissents and assigns reasons.
McCLENDON, J., concurs and assigns reasons.

. Caldwell became the Louisiana Attorney General in January 2008. Cannizzaro became the Orleans Parish District Attorney in November 2008.

. Having failed to timely file an appellant brief, Tenet-Memorial’s appeal was dismissed on April 4, 2011.

. Appellees refer to the testimony of Assistant AG Schafer, who headed the AG's 2005 post-Katrina investigation. Schafer testified that in the past twelve months, no one from the DA’s office had contacted him to discuss the investigation. However, Schafer worked in Medicaid fraud, and once the decision was made to arrest the three health care professionals for second degree murder, Schafer was no longer involved in the case. Schafer acknowledged that he has no authority to prosecute a capital case and that he would not necessarily be privy to communications between the DA and the AG.

. The prior AG, Charles Foti, did not assert the La.Rev.Stat. Ann. § 44:3 A(l) exemption.