KUHN, J.
| Jntervenoi- appeals from a trial court judgment granting plaintiffs writ of mandamus allowing the release of certain public records which intervenor claims are subject to privilege. For the following reasons, we affirm the trial court’s judgment.

FACTUAL AND PROCEDURAL BACKGROUND

By letter dated March 21, 2013, Sandra G. Gillen, Director of State Purchasing with the Division of Administration (DOA), terminated a $197.5 million Medicaid billing contract between the Louisiana Department of Health and Hospitals (DHH) and Client Network Services, Inc. (CNSI) for “cause” pursuant to La. R.S. 39:1678 after consultation with the Attorney General’s office.[1] To determine the basis for the termination, Michael W. McKay, CSNI’s attorney, sent written public records requests on April 5, 2013 to DOA and DHH. The records requests also concerned the contract and the procurement process.
The agencies initially responded that the requests were overly broad and requested McKay narrow their scope. On April 26, 2013, DHH sent a letter stating it and DOA would jointly respond to a portion of the requests on a rolling basis and to the remainder after the requests were limited. McKay replied with a letter suggesting search terms to yield responsive public records. On May 3, 2013, DHH and DOA produced a minimal selection of documents but said they could not produce more because the volume of responsive information was too large. They again asked McKay to refine the search terms.
Meanwhile, on April 26, 2013, McKay received a five-page letter from Gillen to supplement the initial contract termination letter. According to the letter, CNSI personnel made numerous phone calls and sent text messages to former |4DHH Secretary Bruce Greenstein, allegedly tainting the bidding and award process. Among other reasons for termination, the letter also asserted that CNSI unfairly underbid the contract, had misrepresented its financial information, and failed to perform its contractual obligations. Gillen stated that the Attorney General was served with a federal grand jury subpoena for documents on January 7, 2013 and was investigating the matter.
On May 6, 2013, McKay in a letter asked for responsive public records divided into three tiers.[2] Under Tier One, McKay sought records referenced in Gillen’s April 26, 2013 letter outlining DOA’s reasons for terminating the contract. In the first bul *513 let point or section under Tier One, McKay-requested records evidencing the telephone calls and text messages referred to in the letter. The second bullet point or section concerned any documents DOA and DHH contended supported the allegations in the letter. Tier Two involved documents responsive to new search terms suggested by McKay using specific time periods to limit the search (from November 1, 2010 to the present for one set of records and from January 1, 2011 to the present for another set). Tier Three concerned communications based on email addresses as search terms from January 1, 2011 to the present.
On May 10, 2013, McKay received letters from outside counsel for DHH and DOA stating that neither entity would comply with the records requests because the Attorney General asserted the “law enforcement privilege” over the records.
On May 14, 2013, McKay filed a petition for a writ of mandamus pursuant La. R.S. 44:35 under the Public Records Law against DOA, DHH, Kristy H. |r,Nichols as DOA’s statutory records custodian and Commissioner, and Kathy H. Kliebert as DHH’s statutory records custodian and interim Secretary.[3]
The Office of the Attorney General filed a petition for intervention on May 20, 2013, which was granted, alleging that the Attorney General was conducting a criminal investigation involving the award of the contract to CNSI. The Attorney General claimed the records were statutorily exempt from disclosure because they pertained to reasonably anticipated criminal litigation pursuant to La. R.S. 44:3A(1).
In their answers, DHH and DOA alleged they had produced responsive documents totaling over 10,000 pages and stated they were prepared to produce more documents but did not because of the Attorney General’s directive.[4]
The court held a hearing on May 23, 2013, where the sole testimony was provided by Scott Bailey, the chief investigator concerning the contract between CNSI and DHH who was employed by the Louisiana Department of Justice in the Attorney General’s Office. He began working on the case involving CNSI in December 2011, but he and DOA and DHH representatives first met on April 1, 2013, to discuss the records the Attorney General needed for his investigation and the people with whom he wanted to speak. Bailey actually made his first request on April 2, 2013, and continued with rolling requests for documents through May. When asked if there was any collaboration between him and DHH and DOA as to what to produce and what to retain, he answered “absolutely not.” The records were not produced in response to a subpoena, but were voluntarily provided as agreed. According to Bailey, the information he requested from DHH and DOA |fiwas mostly similar to that requested by McKay. Bailey said the process of getting the records had just begun and they began getting them in the beginning of May. He was still awaiting information he originally requested from both entities, stating that there were ten *514 million pages of documents and he still had not received a majority of his requests. While he had some of the documents he requested, he assumed DOA and DHH still had copies of the records also and did not divest themselves of custody.
The court signed a judgment in the matter on May 31, 2013, making the writ of mandamus peremptory in part. DHH and DOA were ordered to produce the documents described in the first bullet point under Tier One in McKay’s May 6, 2013 letter within ten days after entry of the judgment. That bullet point asked for records evidencing the telephone calls and text messages referred to in the April 26, 2013 letter. They were ordered to produce the documents under Tier Two and Tier Three in the letter within a reasonable period of time to be set through discussions between McKay and DHH and DOA. The writ was not made peremptory as to the documents described in the second bullet point under Tier One (“[a]ny documents that you contend support any of the allegations contained in Ms. Gillen’s April 26, 2013 letter”) and the judgment stated that DOA and DHH had no obligation to produce those documents. DOA and DHH were also not required to produce any records of communications between them and the Attorney General that “may reflect the mental impressions, conclusions, opinions, or investigative processes of Office of the Attorney General.” The court did not assess attorney’s fees, costs, damages, or civil penalties pursuant to agreement of the parties.
In granting the writ of mandamus in part, the judge stated that the records were public documents held and maintained by individual agencies and that disseminating the records did not lead to disclosure of the Attorney General’s | ^investigation. He denied the writ as to those documents that reflected communications between the agencies and the Attorney General’s office showing the Attorney General’s thought process or investigative process. He also denied the writ as to those records which supported the termination of the contract because responding to that request would require some discretion in determining which documents were needed and would not be a ministerial task.
The Attorney General suspensively appealed from the court’s judgment.

DISCUSSION

The records at issue are public records that any person may obtain a copy of unless the Public Records Act or another law specifically provides otherwise. La. R.S. 44:31; In re Matter Under Investigation, 2008-1066, p. 24 (La.7/1/09), 15 So.3d 972, 989. Louisiana Constitution Article XII, Section 3, states, “No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law.” The public’s right of access to a public record must be construed liberally in favor of free and unrestricted access, and access can be denied only when a law specifically and unequivocally provides otherwise. Title Research Corp., v. Rausch, 450 So.2d 933, 936 (La.1984); Does v. Foti, 2011-0014, p. 10 (La.App. 1st Cir.12/08/11), 81 So.3d 101, 107, unit denied, 2012-0057 (La.3/2/12), 84 So.3d 537.
The Louisiana Public Records Act contains a specific exemption for records pertaining to reasonably anticipated criminal litigation, La. R.S. 44:3A(1), which states:
A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety and Corrections, marshals, inves *515 tigators, public health investigators, correctional agencies, communications districts, intelligence agencies, or publicly owned water districts of the state, which records are:
(1) Records pertaining to pending criminal litigation or any criminal | litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled, except as otherwise provided in Subsection F of this Section [which is not applicable in the instant ease]; ...
(emphasis added).
The burden of proving that the file is not subject to inspection, copying, or reproduction by a member of the public rests with the custodian. La. R.S. 44:B(3). La. R.S. 44:1A(3) defines “custodian” as “the public official or head of any public body having custody or control of a public record, or a representative specially authorized by him to respond to request to inspect any such public records.”
Whenever there is any doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public’s right to access. Landis v. Moreau, 2000-1157, p. 4 (La.2/21/01), 779 So.2d 691, 694; Does, 2011-0014 at p. 11, 81 So.3d at 107. The burden is on the party seeking to prevent disclosure to prove that withholding of a public record is justified. Hilliard v. Litchfield, 2001-1987, p. 4 (La.App. 1st Cir.6/21/02), 822 So.2d 743, 746. The determination of whether a particular record falls within the exemption provided by La. R.S. 44:3A(1) must be made on a case-by-case basis. Investigation, 2008-1066 at p., 15 So.3d at 991; Does, 2011-0014 at p. 11, 81 So.3d at 107. This determination must be made following a contradictory hearing where there is an opportunity for cross-examination and the presentation of evidence to contradict the claim of privilege. Investigation, 15 So.3d at 991-992; Does, 2011-0014 at p. 12, 81 So.3d at 107. Mixed questions of law and fact generally are subject to a manifest error standard of review but where the relevant facts are not in dispute, the issue can be decided as a matter of law and the review is de novo. Does, 2011-0014 at 13, 81 So.3d at 108.
|flLa. R.S. 44:3A(1) applies to documents held by the Attorney General, not to documents held by DHH and DOA. The Attorney General contends that inter-agency agreements it makes with other state agencies to collect information pertaining to reasonably anticipated criminal litigation entitles that information to the protection of 44:3A(1). According to the Attorney General, the documents are considered “held” under La. R.S. 44:3A(1) pursuant to its request for them.
McKay contends that the Attorney General raises the existence of an interagency agreement between it and DHH and DOA for the first time on appeal. He asserts that the records are not held by the Attorney General simply because the Attorney General requested custody.
The Attorney General relies on Kyle v. Perilloux, 2002-1816 (La.App. 1st Cir.11/7/03), 868 So.2d 27, to support its contention that its alleged interagency agreement protects the records from disclosure. In Kyle, the legislative auditor sought an injunction prohibiting a district attorney from responding to a public records request for copies of the auditor’s work papers that the district attorney had obtained by investigative subpoena.[5] Kyle, 2002-1816 at p. 3, 868 So.2d at 28. The auditor relied on La. R.S. 44:4(6), which *516 exempts from the public records law “any records ... in the custody or control of the legislative auditor ... until the audit is complete, unless otherwise provided.” (emphasis added). Kyle, 2002-1816 at p. 7, 868 So.2d at 30-31. Because the copies of the work papers at issue were in the district attorney’s physical possession and formed part of the records of his office, this Court upheld the trial court’s denial of the injunction, finding that the auditor failed to overcome the presumption of the district attorney’s custody and control of the copies of the work papers in his file. Kyle, 2002-1816 at p. 7-10, 868 So.2d at 31-32, While we noted that physical possession was not synonymous |lflwith custody or control, this Court also recognized that the right of access did not vest the auditor with the custody or control of records.[6] Kyle, 2022-1816 at p. 8 n. 3, 868 So.2d at 31 n. 3. Moreover, pursuant to La. R.S. 44:34, the district attorney did not deny having custody or control of the requested records, and he did not make a written certification of their absence from his custody with the reason for their absence and naming the present custodian.[7] Kyle, 2002-1816 at p. 8, 868 So.2d at 31.
This Court concluded,
There is nothing in La. R.S 44:4(6) which suggests that investigative records in the possession of a law enforcement agency or official, otherwise meeting the definition of “public records,” lose such quality simply because they are identical to or even photocopies duplicates of work papers and other records of the legislative auditor.
And there is no evidence of any inter-agency confidentiality agreement between the legislative auditor and district attorney as to the ownership, custody, or control of the copies of the work papers. The legislative auditor testified that such an agreement exists in standing form between his office and the attorney general. FN6
rN6....But whether such an agreement may legally prevent shared records from being categorized as public records subject to disclosure is an issue which, thankfully, we need not address today.
Kyle, 2002-1816 at p. 9, 868 So.2d at 32. (footnote 5 omitted).
Unlike the case at bar, Kyle involved records which were originally exempt from disclosure, and the discussion of an inter-agency agreement pertained to maintaining the confidentiality of those records. This case involves public records In not exempt from disclosure in the hands of their original and present custodians, which the Attorney General seeks to shield from disclosure as privileged. The Attorney General’s request for those records does not *517 serve to exempt them from the public records doctrine. In Kyle, this Court noted the apparent incongruity in allowing public access to copies of the legislative auditor’s work papers in the hands of the district attorney, but denying access to the original still in the legislative auditor’s possession. Kyle, 2002-1816 at p. 14-15, 868 So.2d at 35. We then concluded, “any incongruity must ultimately be reconciled in favor of the public’s right of access.” Kyle, 2002-1816 at p. 15, 868 So.2d at 35.
Moreover, even if an interagency confidentiality agreement could prevent disclosure of the records, the testimony at the hearing on the writ of mandamus did not support a finding of an interagency agreement between the Attorney General and DHH or DOA.
Other than Kyle, the Attorney General relies on federal and out-of-state cases to support its contentions. However, those cases are not binding upon this Court and they involve different laws and different factual situations. Likewise, the Attorney General relies on its own opinions for support. However, we note that Attorney General opinions are merely advisory and not binding authority. Conachen v. East Baton Rouge Parish School Bd., 2009-0100, p. 6 n. 4 (La.App. 1st Cir.12/23/09), 30 So.3d 820, 824 n. 4.
The Attorney General claims that the district court’s ruling allowing McKay access to the records “guts” the law enforcement exemption of practical effect any time a criminal investigation involves records held by a public body. However, as the district court explained, the disclosure does not reveal the Attorney General’s investigative process because hundreds of thousands of documents are responsive to McKay’s request such that those of particular interest to the Attorney General are just part of a massive group of records. The district court denied the disclosure |12of those records which might tend to show the mental impressions, conclusions, opinions, or investigative processes of the Attorney General’s office.
The district court correctly applied the law in upholding McKay’s right to access records that are unquestionably public. The Attorney General’s interpretation of the public records exemption is not based on the unequivocal language of the statute and is in derogation of the requirement of liberal construction in favor of the public’s right of access to public records.

CONCLUSION

For the reasons assigned, the judgment of the trial court is affirmed. Costs of this appeal in the amount of $2,916.00 are assessed to the Attorney General.
AFFIRMED.

. La. R.S. 39:1678 provides that, if it is determined after the award of a contract that the solicitation or award was in violation of the law, the contract can be terminated.

. This letter is Exhibit 16 attached to the petition.

. The mandamus suit was consolidated with CNSI’s breach of contract suit against the State and other agencies, docket number 2013-621271.

. DOA and DHH filed an exception of unauthorized use of summary proceeding and/or an exception of no cause of action, alleging that production of the records did not involve a ministerial duty and, therefore, was not appropriate for a writ of mandamus. They claimed that the records request itself required them to exercise discretion in determining which documents satisfied it. They also asserted that the competing claims of McKay and the Attorney General involved their discretion in deciding how to respond.

. La. R.S. 44:3A(1) was not applicable because the district attorney had presented the results of his investigation to the grand jury and it pretermitted the matter.

. This Court referred to State ex rel. Wogan v. Clements, 192 So. 126, 131 (La.App.Orl.Cir.1939), affd, 194 La. 812, 195 So. 1 (La.1940), wherein the court held "that the right of access of the Supervisor of Public Accounts (the predecessor to the legislative auditor) to public records of agencies being audited did not vest him with their 'custody or control,’ so as to prevent their disclosure under the statute equivalent to La. R.S. 44:4(6) at that time.”

. La. R.S. 44:34 states:
If any public record applied for by any authorized person is not in the custody or control of the person to whom the application is made, such person shall promptly certify this in writing to the applicant, and shall in the certificate state in detail to the best of his knowledge and belief, the reason for the absence of the record from his custody or control, its location, what person then has custody of the record and the manner and method in which, and the exact time at which it was taken from his custody or control. He shall include in the certificate ample and detailed answers to inquiries of the applicant which may facilitate the exercise of the right granted by this Chapter.