GUIDRY, J.
|aA rejected bidder appeals a trial court judgment sustaining exceptions raising the objections of unauthorized use of summary proceedings and no cause of action to dismiss its petition for issuance of a writ of mandamus. Finding the matter was properly dismissed, we affirm.
FACTS AND PROCEDURAL HISTORY
The State of Louisiana through the Coastal Protection and Restoration Authority (Coastal Protection) advertised for bid work related to the preservation of barrier islands along coastal Louisiana. The deadline for submission of bids was August 6, 2013.[1] Only two bids were received — one from Great Lakes Dredge & Dock Company, LLC, and a second bid from Weeks Marine, Inc. By receipt of separate letters, each dated August 13, 2013, both of the bids were rejected. Great Lakes’ bid was rejected as non-responsive because it failed to complete a section of the unit price bid form labeled “Ref. No. 16.” Weeks Marine’s bid was rejected on the grounds that its base bid exceeded the preconstruction estimated funding available for the project. In rejecting the bids, Coastal Protection advised both bidders “that no contract will be awarded at this time to any bidder, and that [the] project will be re-advertised in the near future.”
Thereafter, on August 14, 2013, Great Lakes filed a petition for a writ of mandamus, asserting that it was “the apparent lowest responsible bidder” and that its failure to specifically write in the unit price for line item 16 on the bid form was a mere clerical error that did not justify the rejection of its bid. Thus, Great Lakes requested that the trial court either issue an alternative writ of mandamus against Coastal Protection compelling it to award Great Lakes a contract for the advertised laproject or issue a rule to have Coastal Protection show cause why such a contract should not be awarded to Great Lakes.[2]
The trial court set the matter for hearing on August 26, 2013; however, prior to the scheduled hearing, Coastal Protection answered Great Lakes’ petition for mandamus and asserted exceptions raising the objections of unauthorized use of summary proceedings and no cause of action. A combined hearing on the petition for a writ of mandamus and on.the exceptions filed by Coastal Protection was held on August 29, 2013.[3] At the hearing, the parties presented arguments and agreed to submit *685 the case on the briefs and exhibits offered into evidence, with no live testimony. The trial court admitted the exhibits, considered the arguments of the parties, and took the matter under advisement. On September 5, 2013, the trial court issued written reasons for judgment (titled “Ruling on Defendant’s Exceptions”) sustaining the exceptions filed by Coastal Protection and indicating that Great Lakes’ claims were to be dismissed with prejudice. Great Lakes devolutively appealed this ruling of the trial court, and a written judgment incorporating the written ruling was signed by the trial court on February 6, 2014.
DISCUSSION
The trial court sustained exceptions raising the objections of unauthorized use of summary proceedings and no cause of action to dismiss Great Lakes’ petition for the issuance of a writ of mandamus. See La. C.C.P. arts. 926(A)(3) and 927(A)(5). Coastal Protection raised the objections based on its assertion that 14its decision to reject Great Lakes’ bid was a discretionary act and therefore not subject to an action in mandamus.
As pertaining to a public entity, mandamus is a writ directing a public officer to perform a ministerial duty required by law. See La. C.C.P. arts. 3861 and 3863. A “ministerial duty” is one in which no element of discretion is left to the public officer; in other words, a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law. Newman Marchive Partnership, Inc. v. City of Shreveport, 07-1890, p. 5 (La.4/8/08), 979 So.2d 1262, 1266. Mandamus will not lie in matters in which discretion and evaluation of evidence must be exercised. The remedy is not available to command the performance of an act that contains any element of discretion, however slight. Bonvillian v. Department of Insurance, 04-0332, p. 3 (La.App. 1st Cir.2/16/05), 906 So.2d 596, 599, writ not considered, 05-0776 (La.5/6/05), 901 So.2d 1081. However, although the granting of a writ of mandamus is considered improper when the act sought to be commanded contains any element of discretion, it has, nevertheless, been allowed in certain cases to correct an arbitrary and capricious abuse of discretion by public boards or officials. Bonvillian, 04-0332 at p. 4, 906 So.2d at 599.
In Central Community School Board v. East Baton Rouge Parish School Board, 08-0036, p. 18 (La.App. 1st Cir.6/6/08), 991 So.2d 1102, 1114, writs denied, 08-1480, 08-1538 (La.12/12/08), 997 So.2d 561, this court observed that La. C.C.P. art. 2592 provides, in part, that summary proceedings may be used for trial or disposition of a mandamus proceeding. Thus, as mandamus proceedings are clearly allowed to be asserted as summary proceedings, the trial court erred in sustaining the dilatory exception raising the procedural objection of unauthorized use of summary proceedings. See Central Community School Board, 08-0036 at p. 18, 991 So.2d at 1114.
| sThe peremptory exception raising the objection of no cause of action is designed to test the legal sufficiency of the petition by determining whether the plaintiff is afforded a remedy in law based on the facts alleged in the pleading. Bunge North America, Inc. v. Board of Commerce & Industry and Louisiana Department of Economic Development, 07-1746, p. 11 (La.App. 1st Cir.5/2/08), 991 So.2d 511, 519, writ denied, 08-1594 (La.11/21/08), 996 So.2d 1106. Generally, no evidence may be introduced to support or controvert the exception of no cause of action. However, an exception to this rule has been recognized by the jurisprudence that a court may consider evidence admit *686 ted without objection to enlarge the pleadings. Maw Enterprises, L.L.C. v. City of Marksville, 14-0090, p. 7 (La.9/3/14), 149 So.3d 210. A court appropriately sustains the peremptory exception of no cause of action only when, conceding the correctness of the facts, the plaintiff has not stated a claim for which he or she can receive legal remedy under the applicable substantive law. Maw Enterprises, L.L.C, 14-0090 at p. 7, 149 So.3d at 215.
In this appeal, Great Lakes raises two assignments of error: (1) that the trial court erred in finding that Coastal Protection had discretion to reject all bids for “just cause”; and (2) that the court erred in finding that Coastal Protection properly rejected Great Lakes’ bid as non-responsive. Thus, in considering Great Lakes’ first assignment of error, we must determine whether Coastal Protection’s decision to reject Great Lakes’ bid involved any element of discretion so as to properly preclude Great Lakes from having a cause of action for mandamus relief.
The authority of a public entity to reject bids is generally found in La. R.S. 38:2214(B), which provides:
The public entity may reject any and all bids for just cause. Just cause for the purpose of the construction of public works is defined, but is not limited to the following circumstances:
| fi(l) The public entity’s unavailability of funds sufficient for the construction of the proposed public work.
(2) The failure of any bidder to submit a bid within an established threshold of the preconstruction estimates for that public work, as part of the bid specifications.
(3) A substantial change by the public entity prior to the award in the scope or design of the proposed public work.
(4) A determination by the public entity not to build the proposed public work within twelve months of the date for the public opening and reading of bids.
(5) The disqualification by the public entity of all bidders.
As acknowledged by Great Lakes, the circumstances listed in La. R.S. 38:2214(B) are merely illustrative and are not the only circumstances that may constitute just cause for a public entity to reject any and all bids. As observed by the Louisiana Supreme Court, “Louisiana follows the general rule of vesting an awarding body with discretion subject to judicial review. Courts will not substitute their judgment for the good-faith judgment of an administrative agency.” Haughton Elevator Division v. State, Through Division of Administration, 367 So.2d 1161, 1165 (La.1979) (emphasis added). Hence, we find no error in the trial court’s determination that the decision of Coastal Protection was a discretionary act that is not subject to a writ of mandamus.
Still, an awarding body’s administrative discretion must be exercised in a fair and legal manner and not arbitrarily; mandamus can be allowed to correct an arbitrary and capricious abuse of discretion by public boards or officials. See Haughton Elevator Division, 367 So.2d at 1165; Bonvillian, 04-0332 at p. 4, 906 So.2d at 599. Thus, we must consider Great Lakes’ second assignment of error, wherein it basically asserts that Costal Protection’s rejection of its bid as non-responsive was an improper and arbitrary exercise of its discretion.
Public contract law requires that all public work done by a public body be advertised for competitive bids and be awarded to the lowest responsible bidder. |7La. R.S. 38:2211-26. This statutory law *687 is a prohibitory law, founded on public policy, which was enacted in the interest of the taxpaying public. The purpose of the law is to prevent public officials from awarding contracts on the basis of favoritism or at possibly exorbitant and extortionate prices. Airline Construction Company, Inc. v. Ascension Parish School Board, 568 So.2d 1029, 1032 (La.1990).
Consistent with this purpose, La. R.S. 38:2212(A)(1)(b)(i) provides that “[t]he provisions and requirement of this Section, those stated in the advertisement for bids, and those required on the bid form shall not be waived by any entity.” This court has previously recognized that:
As it pertains to projects let for public bid, form matters as much as substance. As observed by the Louisiana Supreme Court, “[t]he legislature changed the wording of [La. R.S. 38:2212 A(l)(b)] several times in an attempt to change the law, and to make clear that the requirements of the advertisement for bids and the bid form, as well as the Public Bid Law, shall not be waived.” Hamp’s Construction, L.L.C. v. City of New Orleans, 05-0489, p. 9 (La.2/22/06), 924 So.2d 104, 110. Further, as this court stated in Barriere Construction Co., LLC v. Terrebonne Parish Consolidated Government, 99-2271, pp. 5, 7-8 (La.App. 1st Cir.2/18/00), 754 So.2d 1123, 1126 and 1127-1128, writ denied, 00-0801 (La.5/5/00), 761 So.2d 546:
A public entity may reject any and all bids for just cause. [La. R.S.] 38:2214 B. The statute defines certain situations that constitute “just cause,” but states the definition is not limited to those circumstances. [La. R.S.] 38:2214 B. The “just cause” provision must be read in pari materia with the provision stating that the Public Bid Law’s requirements, along with those required by the advertisement for bids and the bid form, cannot be considered as informalities and cannot be waived. [La. R.S.] 38:2212 A(l)(b).
[[Image here]]
The statutory requirements, advertisement requirements, and bid form requirements, including those included by reference to other documents, must be completely and accurately observed. The Public Bid Law could not be more clear in stating that a bidder’s failure to comply with every detail can invalidate the bid. The consequences of such defects should be on the bidder |swho prepares the bid. It would put public entities in a totally untenable situation if this court were to require the waiver of certain irregularities in the face of the statutory prohibition. There could never be any certainty for the public entity during the bid opening procedure if a court could simply second-guess the process and state that a particular kind of defect should have been waived.
Roof Technologies, Inc. v. State, Division of Administration, Office of Facility Planning and Control, 09-0925, p. 5 (La.App. 1st Cir.10/28/09), 29 So.3d 621, 623-624.
In this case, the following instructions, in pertinent part, were provided to potential bidders:
INSTRUCTIONS TO BIDDERS
[[Image here]]
ARTICLE 5
BID PROCEDURE
5.1 Form and Style of Bids
[[Image here]]
5.1.2 All blanks on the Bid Form shall be filled in manually in ink or typewritten.
[[Image here]]
*688 5.1.5 Bidders are cautioned to complete all alternates should such be required in the Bid Form. Failure to submit alternate prices will render the bid non responsive and shall cause its rejection.
5.1.6 Bidders are cautioned to complete all unit prices should such be required in the Bid Form. Unit prices represent a price proposal to do a specified quantity and quality of work.
5.1.7 Bidders are strongly cautioned to ensure that all blanks on the bid form are completely and accurately filled in.
[[Image here]]
5.4 Modification or Withdrawal of Bid 5.4.1 A bid may not be modified, withdrawn or canceled by the Bidder during the time stipulated in the Advertisement for Bids, for the period following the time and bid date designated for the receipt of |sbids, and Bidder so agrees in submitting his bid, except in accordance with R.S. 38:2214 which states, in part, “Bids containing patently obvious mechanical, clerical or mathematical errors may be withdrawn by the Contractor if clear and convincing sworn, written evidence of such errors is furnished to the public entity within forty eight hours of the Bid Opening excluding Saturdays, Sundays and legal holidays”.
ARTICLE 6
CONSIDERATION OF BIDS
[[Image here]]
6.2 Rejection of Bids
6.2.1 The Owner shall have the right to reject any or all bids and in particular to reject a bid not accompanied by any required bid security or data required by the Bid Documents or a bid in any way incomplete or irregular. [Emphasis added.]
The bid documents in this matter utilized the basic “Louisiana Uniform Public Work Bid Form” (“bid form”) and the “Unit Price Form” developed by the Division of Administration, Office of Facility Planning and Control[4] to present the specified items for bid related to the project. See La. R.S. 38:2212(A)(l)(b)(ii)(aa). The subject project bid form includes lines for potential bidders to provide a total base bid and totals for up to three alternates[5]; however, although options are provided on the form for three possible alternates, a description is given for only two alternates, with a notation on the provision for the third alternate option being described and marked as “not applicable.” On the unit price form, a description is given for each bid item and each item is marked as being for the base bid or for one of the two alternates. Item number 16 (labeled “Ref. No. 16”) is described as “Construction Surveys” and is marked as being |inassociated with “Alt. # 2.”
Great Lakes provided responses for all the information requested on the bid form; however, on the unit price form, it failed to provide any response for item number 16. Great Lakes excuses its failure to provide *689 a response to item number 16 by first arguing that the “Instructions to Bidders” should not be considered for determining bid requirements, because the instructions are not specifically referenced in the advertisement for bids, the bid form, or La. R.S. 38:2212.
The provisions to complete “all alternates,” “all unit prices,” and “all blanks” are only stated in the Instructions to Bidders and are not expressly stated on the actual bid forms, in the advertisement for bids, or in La. R.S. 38:2212; however, unlike the reference to the advertisement for bids made in La. R.S. 38:2212(A)(l)(b)(i), which indicates that the provisions must be “stated” in that document, there is no such condition for the provisions on the bid form. Hence, we find that the trial court properly concluded that, based on the instructions provided, the completion of all alternates, all unit prices, and all blanks are provisions that are “required on the bid form.”
As a second basis for excusing its failure to provide a response for item number 16 on the unit price form, Great Lakes relies on La. R.S. 38:2212(A)(3)(e), which provides:
Any proposal shall include no more than three alternates. An alternate bid by any name is still an alternate. Alternates, if accepted, shall be accepted in the order in which they are listed on the bid form. Determination of the low bidder shall be on the basis of the sum of the base bid and any alternates accepted. However, the public entity shall reserve the right to accept alternates in any order which does not affect determination of the low bidder. [Emphasis added.]
Pointing out the emphasized language, Great Lakes argues that because Coastal Protection “did not indicate it was accepting any alternates,” the failure to provide a response to item number 16 should not have disqualified its bid. We find several flaws in this argument.
In First, we observe the conditional language used in the statute regarding alternates. The statute expressly states “if accepted.” The mere fact that bid items were listed for “alternates” indicated the possibility that alternates might be accepted. Second, plain logic dictates an understanding that a decision to accept any alternates would largely depend on the amount bid. And finally, we observe that Great Lakes provided responses to all of the other bid items for Alternates 1 and 2,[6] which discredits any implied assertion that Great Lakes did not know it had to provide a response for alternate bid items. Hence, we find no merit in this secondary argument raised by Great Lakes.
Great Lakes still maintains that Coastal Protection acted arbitrarily in rejecting its bid as non-responsive, even if it is determined that the provisions to complete “all alternates,” “all unit prices,” and “all blanks” were provisions “required on the bid form,” relying on two opinions rendered by other state circuit courts.[7] *690 Both of those cases involved litigation in which the unsuccessful bidder sought mandamus relief to have the successful bid rejected because responses were not provided for certain sections of the bid form.
In Lemoine Company, L.L.C. v. Lafayette Airport Commission, 10-0833, p. 2 (La.App. 3d Cir.12/8/10), 54 So.3d 140, 142, the appellant argued that the successful bid should have been disqualified as non-responsive and non-conforming because all of the blanks on the bid form were not filled in as required in the bidding documents. Similar to the instant matter, the awarding authority in \ ^Lemoine simply utilized the basic bid form developed by the Division of Administration, Office of Facility Planning and Control, but modified it to solicit information and quotes for the particular project proposed. In particular, the bid form in the Lemoine case contained the following provisions regarding alternates:
ALTERNATES: For any and all work required by the Bidding Documents for Alternates including any and all unit prices designated as alternates in the unit price description.
Alternate No. 1 (Owner to provide description of alternate and state whether add or deduct) for the lump sum of:
_Dollars ($_)
Alternate No. 1 (Owner to provide description of alternate and state whether add or deduct) for the lump sum of:
_Dollars ($_)
Alternate No. 1 (Owner to provide description of alternate and state whether add or deduct) for the lump sum of:
_Dollars ($_)
Lemoine, 10-0833 at p. 4, 54 So.3d at 143. The appellate court found that because the bid form did not present any alternate proposals, “[rjequiring a bidder to fill in blanks having no bearing on its bid simply for the sake of making a notation on the document would lead to an absurd consequence in that it would require a bidder to perform a vain and useless act.” Lemoine, 10-0833 at pp. 6-7, 54 So.3d at 144.
Unlike Lemoine, the bid form in the present matter did include alternates. In this case, Coastal Protection modified the pertinent part of the basic bid form designed by the Division of Administration, Office of Facility Planning and Control to read as follows:
ALTERNATES: For any and all work required by the Bidding Documents for Alternates including any and all unit prices designated as alternates in the unit price description.
Additive Alternate No. 1 (Additional Cost of Expanded BA-Jf8 Marsh Creation Area) for the sum of:
_Dollars ($_)
Additive Alternate No. 2 (Additional Cost of Expanded BA-JpSEB Marsh Creation Area) for the lump sum of:
_Dollars (⅝ 1
11SAlternate No. 3 (Not Applicable) for the lump sum of: Not Applicable Dollars ($Not Applicable)
As quoted above, the project bid form in this matter indicated that a response should be given “[flor any and all work required by the Bidding Documents for Alternates including any and all unit prices designated as alternates in the unit price description.” So unlike the successful bidder in Lemoine, the bidding documents in this matter, including the bid form, clearly presented alternate proposals, making the *691 holding of that case inapplicable to the matter before us.
In the second case cited by Great Lakes, Boggs & Poole Contracting Group, Inc. v. Caddo-Bossier Parish Port Commission, 45,669 (La.App.2d Cir.11/3/10), 54 So.3d 1126, the unsuccessful bidder protested the award of the contract to the successful bidder, alleging that the successful bid was unresponsive because the bidder should have written its response for the total bid amount on both of the two blank lines provided on the bid form. The instructions for completing a bid for submission in that case included the following: “If submitting a paper bid, the bidder must record his bid in ink in figures and only in figures. The total bid amount must be written in the proper places provided for on the proposal form.” Boggs & Poole Contracting Group, Inc., 45,669 at p. 3, 54 So.3d at 1127 (emphasis in original). The space on the bid form for the total amount bid appeared as “_ Dollars ($_).” The successful bidder in the Boggs & Poole Contracting Group, Inc. case left the first space blank, and only provided a response, written in figures, in the second blank. Boggs & Poole Contracting Group, Inc., 45,669 at pp. 3-4, 54 So.3d at 1127-28. The appellate court affirmed the ruling of the trial court finding that the successful bidder did not deviate from the bidding requirements by leaving the first space blank. As the court observed, “[i]t certainly would appear from the form that was |14the only reasonable and proper place to insert a numerical figure.” Boggs & Poole Contracting Group, Inc., 45,669 at p. 6, 54 So.3d at 1129.
There is no such similar conundrum presented in the present matter. As previously stated, in this matter, according to the instructions and information provided, all of the blanks, unquestionably, had to be completed. Great Lakes’ failure to provide any response for item number 16 was simply an oversight. It cannot claim that it was confused regarding where or how to insert responses on the unit price form, since Great Lakes properly provided responses for the other 20 items listed on the unit price form, including items number 17A and 17B, which came after the overlooked item number 16 on the form. Hence, we find there was no showing that Coastal Protection acted arbitrarily, capriciously, or in any way abused its discretion when it decided to reject Great Lakes’ bid as non-responsive.
CONCLUSION
Accordingly, we find no error in the trial court’s judgment sustaining Coastal Protection’s peremptory exception raising the objection no cause of action. We therefore affirm the judgment of the trial court dismissing Great Lakes’ petition for mandamus with prejudice. All costs of this appeal are assessed to the appellant, Great Lakes Dredge & Dock Company, LLC.
AFFIRMED.

. The original submission date was July 25, 2013; however, after a pre-bid conference and the issuance of addenda to the plans and contract documents, the submission deadline was extended to August 6, 2013.

. Great Lakes also requested that after hearing, the trial court issue a judgment making the writ of mandamus peremptory ánd grant such other relief as Great Lakes might be afforded under law and equity.

. The trial court's written reasons for judgment and the judgment in this matter state that the matter was heard on August 26, 2013, although the transcript of the hearing is dated August 29, 2013. Court minutes indicate that there was a hearing on August 26, 2013, at which time the matter was reassigned to August 28, 2013. The next minute entry is dated August 29, 2013, but nothing is mentioned regarding the subject matter of the hearing. Instead, the minute entry simply states “Chairman of Louisiana Board of Examiner of Certified Shorthand Reporters.”

. An annotation at the bottom of the "Louisiana Uniform Public Work Bid Form” states "[t]he Unit Price Form shall be used if the contract includes unit prices. Otherwise it is not required and need not be included with the form. The number of unit prices that may be included is not limited and additional sheets may be included if needed.” This statement is in accordance with La. R.S. 38:2212(A)(l)(b)(ii)(aa), which provides in part, "The bid form ... shall require ... the following sections and information: ... on public works projects where unit prices are utilized, a section on the bid form where the unit price utilized in the bid shall be set forth[.]”

. See La. R.S. 38:2212(A)(3)(e).

. Items 10A through 14B all pertained to Alternate # 1 and items 15A through 17B all pertained to Alternate # 2.

. Great Lakes also refers to a district court decision and an attorney general opinion as support for its argument that its failure to complete item number 16 did not warrant finding its bid unresponsive or rejecting its bid. However, neither the opinion of a district court, the attorney general, nor other circuit courts is authoritative or binding on this court. See McKay v. State, Division of Administration, 13-1265, p. 11 (La.App. 1st Cir, 3/21/14), 143 So.3d 510, 517; Sacco v. Paxton, 12-1595, p. 8 (La.App. 4th Cir.1/30/14), 133 So.3d 213, 218, writ denied, 14-0444 (La.4/17/14), 138 So.3d 628; Kean’s v. Parish of East Baton Rouge, 95-1054, p. 3 *690 (La.App. 1st Cir.2/23/96), 668 So.2d 1343, 1345 n. 1, aff'd, 96-0751 (11/25/96), 685 So.2d 1043.